**KAMILCHE COMPANY; Simpson Redwood Co., Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 93–15768.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1994.

Decided May 8, 1995.

**1060**

Ed Kolto, Pillsbury, Madison & Sutro, San Francisco, CA, for plaintiffs-appellants.

Joan Oppenheimer, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

Before: GOODWIN, O'SCANNLAIN, and KLEINFELD, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

In this federal corporate income tax refund case, we must decide whether judicial determination of ownership of one portion of real property collaterally estops the United States from challenging title to the entire property.

## I

This case arises from a boundary dispute involving lands owned by the Simpson Redwood Company and the State of California. The disputed boundary runs in a diagonal, stair-step fashion from northwest to southeast through township 12 north, range 1 east ("township 12–1") in Humboldt, California and divides land owned and logged by Simpson, to the east, from Prairie Creek State Park, to the west.

In 1882, S.W. Foreman surveyed township 12–1 (the "Foreman survey"). Four years later, John Gilcrest surveyed the adjoining township 12–2 (the "Gilcrest survey"). Under the Gilcrest survey, the boundary at issue was situated to the north and east of the boundary as identified in the Foreman survey. This inconsistency created a hiatus between the boundary lines of the State Park and what was later to become Simpson's property. Under the Foreman survey, the land in this hiatus belonged to Simpson's predecessors; under the Gilcrest survey, the land was part of the State Park. The State subsequently advised surveyors and property owners to rely on the Gilcrest survey.

In 1978, the area was surveyed yet again, this time by the United States Bureau of Land Management. Recorded in March of 1981, this survey reconfirmed the older Foreman survey. The effect was to shift the line separating the State Park and Simpson's property to the south and west, leaving a 161.49–acre strip of property between the newly established boundary and the boundary established by Gilcrest. That strip of land-claimed both by Simpson and by the

State of California—constitutes the property at issue here.

The disputed property has been the subject of several lawsuits between Simpson, the United States, and the State of California. Of particular relevance is an action brought in federal court by the United States in April 1984, *United States v. Simpson Timber Co.*, N.D.Cal. No. C–84–2028–TEH, May 24, 1988 ("*Simpson I* "), to condemn a 3.49–acre portion of property within the disputed strip for use as a federal highway bypass. Simpson cross-claimed against the State of California in this action, seeking to quiet title to the entire disputed area. The court dismissed Simpson's cross-claim, directing Simpson to file· it in state court. Simpson did so (*Simpson Redwood Co. v. State*, No. 75916, Cal.Sup.Ct. (Aug. 1985)); ultimately, Simpson and the State settled the state-court suit by executing a stipulation for judgment. The stipulation provided that Simpson would dismiss its quiet title action and donate the lands in issue, less the 3.49 acres subject to condemnation, to the State. In return, the State agreed not to contest Simpson's claim to the *federal condemnation proceeds.*

Simpson then filed a motion for summary judgment in *Simpson I.* In an order entered May 24, 1988, the district court granted Simpson's summary judgment motion, ruling in pertinent part that:

1. the Foreman Survey of 1882 controls the location of all land within township 12–1 ... and

2. on the date of taking, plaintiff Simpson owned all of the land in Township 12–1 which the government sought to condemn.

The United States did not appeal.

In late 1987, pursuant to the stipulation, Simpson quit-claimed the remaining 158 acres in question to the State. On its 1987 federal tax return, Simpson claimed a charitable deduction of $14,100,000 for this donation. The Internal Revenue Service disallowed Simpson's deduction and assessed a deficiency of $5,233,913 against it which Simpson thereupon paid.

After filing a claim for a refund, which· the Commissioner denied, Simpson and its parent company, Kamilche Company (collectively "Simpson"), commenced the instant suit against the United States. Simpson claimed that, pursuant to *Simpson I,* the disputed land belonged to Simpson; thus, Simpson reasoned, it properly took a charitable deduction for the donation of those lands and was entitled to a refund.

In response, the United States argued thàt the State of California had acquired title to the remaining 158 acres at issue by adverse possession prior to the date of Simpson's donation. As Simpson did not own the property when it donated it, the United States concluded, Simpson was not entitled to a charitable deduction and no refund was payable.[1]

The district court found the United States' argument persuasive and entered judgment against Simpson. *Kamilche Co. v. United States,* 809 F.Supp. 763 (N.D.Cal.1992). Simpson timely appealed.

## II

Simpson contends on appeal that *Simpson I* collaterally estops the United States from challenging Simpson's ownership of the disputed property.[2] As Simpson reasons, implicit in the *Simpson I* court's conclusion that

---

1. Traditionally, a defendant is restricted in the assertion of the rights of a third party. *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985) ("[A] litigant must normally assert his own legal interests rather than those of third parties."). However, where the defendant · himself has a distinct and personal interest in the outcome of litigation, principles of *jus tertii* will not be held to apply. *Id.* at 805, 105 S.Ct. at 2970–71. Here, the United States, although asserting California's ownership of the property at issue, in reality seeks to vindicate its own interest in collecting tax revenues.

2. Simpson raises two additional claims on appeal: (1) Simpson argues that the United States is equitably estopped from asserting California's ownership of the disputed property; and (2) Simpson claims that California's ownership of the disputed property was not adverse. Because we are persuaded that collateral estoppel precludes the United States from contesting Simpson's ownership, we need not and do not · reach Simpson's remaining arguments.

Simpson owned 3.49 acres within the disputed strip was the conclusion that Simpson owned the entirety of the disputed strip; as the issue of Simpson's ownership had been litigated and decided, the United States was precluded from asserting California's ownership of the property. We agree.

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Clark v. Bear Stearns & Co., Inc.,* 966 F.2d 1318, 1320 (9th Cir.1992). The party asserting collateral estoppel must first show that the estopped issue is identical to an issue litigated in a previous action. *United States Aluminum Corp. v. Alumax, Inc.,* 831 F.2d 878, 881 (9th Cir.1987), *cert. denied,* 488 U.S. 822, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). In addition, "[i]n order for collateral estoppel to apply, the issue to be foreclosed in the second litigation must have been litigated and decided in the first case." *Starker v. United States,* 602 F.2d 1341, 1344 (9th Cir.1979).

Our analysis takes two steps. We must first determine whether the issue of ownership of a portion of the disputed strip—the issue litigated in *Simpson I* —is identical to the issue of ownership of the entire strip—the issue which the United States seeks to litigate here. Assuming that these issues are indeed identical, we must determine whether the ownership of the entire property was litigated and decided in *Simpson I.*

Applying these standards to the facts before us, we can say with certainty that the question of ownership of the 3.49–acre portion was both litigated and decided in *Simpson I.* The parties raised and contested this issue in their pleadings. Similarly, the district court expressly addressed this issue in its judgment. Accordingly, the decisive matter is whether the issue of the ownership of the 158 acres disputed here is identical to the issue of the ownership of the 3.49 acres litigated and decided in *Simpson I.*

This court has, in the past, relied upon the Restatement of Judgments to "mark[ ] the way through this murky area." *See Starker,* 602 F.2d at 1344. The Restatement identifies four factors to be considered when determining whether the issue in a successive proceeding is identical to an issue previously litigated:

(1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

Restatement (Second) of Judgments § 27 cmt. c; *see also Starker,* 602 F.2d at 1344.

Application of these principles here leads us to conclude that the issue decided in *Simpson I* and the issue presented here are indeed identical. In *Simpson I,* the United States argued that the State owned the property within the Foreman and Gilcrest boundaries. Here, the United States' contention is the same: the State owned the property between these lines. Further, the evidence and the arguments required to prove ownership of the 158 acres are identical to those necessary to prove ownership of the 3.49 acres. The only difference between the two cases is that here, the United States asserts the State's ownership by adverse possession. Pretrial preparation and discovery could have been expected to embrace this argument. Ultimately, "[o]nly the connecting argument between these two assertions differs."[3] *Starker,* 602 F.2d at 1345.

3. The United States argues that collateral estoppel cannot apply because the 158–acre portion of the strip of property that is the subject of the instant case is "different" from the 3.49–acre portion of the strip that was involved in *Simpson*

I. In support of its contention, the United States cites the "separable facts" doctrine articulated by the Supreme Court in *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Under this doctrine, "if the relevant

We are persuaded as a matter of logic that because the ownership of the 3.49 acres was both litigated and decided in *Simpson I,* so too was the ownership of the remaining 158 acres within the disputed strip. If the issues in two cases are identical, and if one of these issues has been litigated in a prior proceeding, it follows that the identical issue must necessarily have been litigated as well. Accordingly, we conclude that *Simpson I* collaterally estops the United States from challenging Simpson's ownership of the property.

█ The United States argues that because the issue of adverse possession was never raised in *Simpson I,* that decision cannot collaterally estop the United States from litigating such issue in the instant proceeding.[4]

The United States fails to recognize that "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case."[5] *Yamaha Corp. of America v. United States,* 961 F.2d 245, 254 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). *See also* Restatement (Second) of Judgments § 27 ("[I]f the party against whom preclusion is sought did in fact litigate an issue ... and suffered an adverse determination, ... new arguments may not be presented to obtain a different determination of that issue."); 1B Moore's Federal Practice ¶ 0.443[2] ("Any

contention that is necessarily inconsistent with a prior adjudication of a material and litigated issue ... is subsumed in that issue and precluded by the effect of the prior judgment as collateral estoppel.").

The United States cannot now argue adverse possession—or any other legal theory—that is inconsistent with the *Simpson I* court's ruling that Simpson owns the disputed property. Any such challenges are subsumed in and precluded by *Simpson I*'s collateral estoppel effect.

### III

█ Because it has been judicially determined that Simpson owned the lands at issue, Simpson properly took a charitable deduction on its corporate income tax return for the contribution of these lands and thus is entitled to a refund.

Under Treasury Regulation § 1.170A–1(c)(1), "[i]f a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution." The district court did not determine the fair market value of the 158 acres at issue, however. Generally, this would require us to remand for an assessment of the property's value. However, because the parties agree that the fair market value of the land at the

facts in the two cases are separable, even though they be similar or identical, collateral estoppel does not govern the legal issues which recur in the second case." *Id.* at 601, 68 S.Ct. at 721.

*Sunnen*'s scope has been substantially narrowed by the Supreme Court, however. *See Montana v. United States,* 440 U.S. 147, 161, 99 S.Ct. 970, 977–78, 59 L.Ed.2d 210 (1979); *Starker,* 602 F.2d at 1346–47. *Sunnen* was limited by the Court to cases in which there had been a "significant change in the legal climate." *Starker,* 602 F.2d at 1347 (quotation omitted). As there has been no such change in the instant case, *Sunnen*'s narrow standard does not govern.

4. To support its argument, the United States points to language in *Sunnen* which it argues controls the instant question: "[in collateral estoppel], the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time." 333 U.S. at 598, 68 S.Ct. at 720. Read in context, however,

it appears that the Court uses the term "points" to refer to the broad concept of "claims," in essence stating simply that collateral estoppel does not preclude parties from raising claims not asserted in an earlier proceeding.

5. The district court suggests that this court's ruling in *Robi v. Five Platters, Inc.,* 838 F.2d 318 (9th Cir.1988) is to the contrary. We disagree.

In *Robi,* this court defined, in successive paragraphs, claim preclusion and issue preclusion: Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.... The doctrine of issue preclusion prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding. *Id.* at 322 (quotations omitted). Nowhere does the court state that legal theories not asserted in an earlier action can be raised to defeat the resolution of an issue decided in that action.

time of its donation was $14,100,000, there is no need to remand for valuation.

REVERSED.