**SECURITY PEOPLE, INC., Plaintiff,**

v.

**MEDECO SECURITY LOCKS, INC., Defendant.**

**No. C–98–2556–CAL.**

United States District Court, N.D. California.

July 8, 1999.

Frear Stephen Schmid, Law Offices of Frear S. Schmid, San Francisco, CA, for plaintiff.

Michael A. Ladra, Michelle G. Breit, Irwin R. Gross, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiff Security People, Inc. ("SPI") and defendant Medeco Security Locks, Inc. ("Medeco") are in the high security lock industry. They design, develop, manufacture and sell security related mechanisms, software and systems. They are competitors.

In this action, SPI contends that Medeco's products infringe one of SPI's patents, and were developed from confidential information that SPI provided to Medeco under a confidentiality and non-disclosure agreement in 1989. The causes of action alleged in the complaint are: (1) misappropriation of trade secrets; (2) breach of

contract, the 1989 agreement; (3) unfair competition under the California Business and Professions Code; and (4) infringement of SPI's '043 patent. Medeco denies the allegations, and filed a counterclaim which is not at issue in the pending motion.

## I.

Medeco has brought a motion for summary judgment on all four causes of action. Medeco contends that SPI's state law claims (causes of action 1, 2, and 3) are barred by a 1995 settlement agreement between the parties. Medeco also contends that the fourth cause of action, patent infringement, is barred by collateral estoppel, because the same issues were litigated and determined in Medeco's favor in a prior lawsuit between the parties; *Gokcebay v. Medeco Security Locks*, C–93–0627–EFL, in this court.

SPI opposes the motion. It was briefed, argued, and submitted for decision. The court has reviewed the moving and opposing papers, the record of the case, the arguments of the parties, and the applicable authorities. The court concludes that there are no genuine issues of material fact which preclude summary judgment under Rule 56 of the Federal Rules of Civil Procedure, and that Medeco's motion should be granted.

## II.

In the first action, SPI sued Medeco for misappropriation of trade secrets, breach of contract, unfair competition, and patent infringement. The state law claims were based upon the alleged breach of the 1989 confidentiality agreement.

Medeco moved for a summary judgment that its so-called VLS product did not infringe plaintiff's patents. The court granted Medeco's motion. In a sixteen page order, the court construed SPI's patent claims, and then found that Medeco's VLS device did not infringe those claims.

The parties then settled the suit in 1995, including the patent claim and the state law claims. As a part of the settlement, Medeco paid SPI a sum of money, and SPI gave Medeco a release of all claims and a covenant not to sue for patent infringement. The parties also stipulated to request vacation of the summary judgment order, but the settlement agreement specifically stated that it was not contingent upon vacation of that order. The order was not vacated by the court.

The present action is quite similar to the first. The state law claims for misappropriation of trade secrets, breach of contract, and unfair competition are again based upon the 1989 agreement. Both the present and the prior patent infringement claims concern SPI's '043 patent. And both infringement cases involve the same product of Medeco. The first suit involved defendant's VLS, while the present suit alleges infringement by defendant's PMLS product. However, at oral argument the parties agreed that the VLS and PMLS are the same for purposes of patent infringement analysis.

## III.

As stated, Medeco's motion for summary judgment on the state law claims (causes of action 1, 2, and 3) is on the ground that they are barred by the 1995 settlement agreement. The settlement agreement contained a release clause, which provided in relevant part as follows:

In consideration of the settlement amount and other consideration described in this agreement, and the mutual promises and covenants contained herein, *SPI and its predecessors ... release and forever discharge Medeco ... of and from any and all claims, damages, actions which were or could have been alleged by SPI in the suit,* including any claims of actual damages, enhanced damages, attorneys' fees, injunctive relief, expenses and costs ... (emphasis added).

Medeco contends that the release bars the state law claims because they have the same genesis as the state law claims in the first action; that is, a breach

of the 1989 confidentiality agreement. SPI contends that the release only covered claims involving the products at issue in the prior suit, and that this action is for acts of defendant subsequent to the release. Therefore the issue is whether the release was limited to the *products* then at issue, or whether the release bars all *claims* and *causes of action* based upon the confidentiality agreement that was at issue between the parties in the first case.

### A.

The settlement agreement appears to refer to settling claims and causes of action, and not to settling disputes with respect to specific products.

The settlement agreement states on page one that:

> SPI and Medeco mutually and reciprocally desire to terminate the suit by entering into a settlement agreement with *respect to all claims and causes of action in the suit.*

The release provisions of the agreement state:

> ... SPI and its predecessors ... release and forever discharge Medeco ... of and from *any and all claims, damages, actions which were or could have been alleged by SPI in the suit,* ...
>
> ... Medeco and its predecessors ... release and forever discharge SPI ... of and from *any and all claims, damage, actions which were or could have been alleged by Medeco in this suit,* ... (emphasis added)

In fact, the settlement agreement, in referring to Medeco's products, makes the settlement applicable to future products and processes that are substantially the same:

> 1.4 "Medeco Product" shall mean the products and/or processes which have been marketed by Medeco prior to the effective date of this Agreement, as shown in Attachment "B" hereto, *as well*

*as future products and/or processes which are substantially the same* as these products and/or processes, even though such future products and/or processes may include different computers, readers, software or processors. (emphasis added).

And SPI covenanted not to sue Medeco for patent infringement with respect to the future use and sale of those Medeco products. Settlement Agreement, ¶ 5.4.[1]

It therefore appears from the language of the settlement agreement that SPI released all *claims* against Medeco which were or could have been alleged in the first case. The issue therefore is whether the state law claims asserted in this case are claims that were or could have been alleged in the first case.

### B.

Medeco contends that all three of the state law claims (trade secret misappropriation, breach of contract and unfair competition) asserted in this case were alleged, settled and released in the prior litigation.

As to claim one, the trade secret misappropriation claim, Medeco argues that it is an alleged breach of the 1989 confidentiality agreement that was alleged in the first case; and that once the confidential relationship was breached, subsequent uses of the allegedly misappropriated information, whether in the same or different products, constitutes the *same claim.* That is, Medeco argues that its alleged subsequent use of the *same* information in its PMLS product constitutes the same claim as a matter of law. Medeco relies on *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (9th Cir.1969) and *Intermedics, Inc. v. Ventritex, Inc.*, 822 F.Supp. 634 (N.D.Cal.1993). Medeco also argues that SPI's breach of contract and unfair competition claims (counts 2 and 3) are barred for the same

---

**1.** The scope of that covenant appears to include future products which are substantially the same as those covered in the Settlement Agreement. Settlement Agreement ¶¶ 1.4 and

5.4. However, Medeco does not assert these provisions as a ground for its summary judgment motion.

reason. That is, they are based on the same alleged misappropriation of trade secrets. *See Intermedics, Inc.* 822 F.Supp. at 646.

In *Monolith,* the Ninth Circuit held that a trade secret misappropriation claim occurs at the time the defendant makes its first adverse use of the trade secret in violation of the alleged confidential relationship. *Monolith* 407 F.2d at 292. The court explained that California does not treat trade secrets as if they were property. *Id.* at 293. Rather, the court said that "it is the relationship between the parties at the time the secret is disclosed that is protected." *Id.* "The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damages suffered may be aggravated." *Id.* The court concluded that the trade secret claim arose but once.

In *Intermedics, Inc.,* the court held that a misappropriation cause of action accrues when the confidential relationship between the parties is *initially breached.* The court rejected plaintiff's "property" theory of the protection of trade secrets; that is, that each subsequent misappropriation of a trade secret constitutes a new claim. Citing *Monolith,* the court stated that

California authorities have rejected the theory that trade secrets should be treated as forms of "property" and have refused to permit notions imported from the law of property to drive development of trade secret statute of limitations doctrine. *Instead, California authorities have insisted that the focus of trade secret law be on the relationship of trust and confidence between a party who holds a trade secret and the parties with whom that secret was shared.*

*Intermedics, Inc.,* 822 F.Supp. at 651 (emphasis added).

That court also said that California law treats a continuing misappropriation claim as a single claim, which accrues when a party breaches the confidential relationship. *Id.* at 643, citing Cal.Civ.Code § 3426.6. The decision to focus on the relationship, and not to treat trade secrets as "property," reflects a policy choice by California in which the interests in promoting the free use of new ideas is elevated over the interests in rewarding holders of economically significant secrets. *Id.* at 652.

The *Intermedics* court used the same rationale to find that breach of contract and unfair competition claims were also barred. The court explained

it would be "anomalous" to reject the continuing tort doctrine for purposes of Intermedics' claims of misappropriation of trade secrets or confidential information, but to accept an analogous "continuing breach" doctrine for purposes of the breach of contract claims that are based on the *same alleged misappropriations* ... Faced with the issue pressed here by plaintiff, we believe that California courts would perceive no principled basis for treating differently, with respect to the statute of limitations, a confidential relationship that is implied by law and one that is created by a written instrument.

*Id.* at 646 (emphasis added).

The court notes that both *Monolith* and *Intermedics* involved the issue of when the claims accrued for purposes of statutes of limitation. But the same rationale should apply in deciding whether a later claim is the same as an earlier one.

SPI contends that *Ruckelshaus v. Monsanto,* 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) overrides the rationale of *Monolith* and *Intermedics.* That is, plaintiff cites *Ruckelshaus* for the proposition that trade secrets are "property," and that each new misappropriation of a property right constitutes a new cause of action. However, SPI's reliance on *Ruckelshaus* is misplaced for two reasons. First, *Ruckelshaus* is inapplicable here because it turned on how Missouri law defined a trade secret. Missouri followed the Restatement of Torts provisions, while California adopted the Uniform Trade Secrets Act. The *Monolith* and *Intermedics* decisions interpreted California law, and California law governs the present case. Sec-

ond, the Supreme Court's analysis was from the standpoint of a "takings" claim under the Fifth Amendment, and not a straight-forward trade secret misappropriation claim. That is, the issue was whether *Monsanto* had a property interest protected by the Fifth Amendment's takings clause.

### C.

This court therefore concludes that all of SPI's claims for misappropriation of trade secrets by virtue of Medeco's alleged breach of the 1989 agreement constitute one claim. That claim was litigated, settled, and released in 1995.

With respect to its breach of contract claim, SPI argues that Medeco's liability under the 1989 agreement continues, in spite of the settlement agreement. *See e.g. Dillon v. Board of Pension,* 18 Cal.2d 427, 430, 116 P.2d 37 (1941). SPI relies on cases which involved *installment* contracts. But the 1989 non-disclosure agreement is not analogous to an installment contract. The agreement involves a unitary contract, not divisible duties. And SPI does not address the significance of the relevant holdings in *Intermedics, Inc.* Nor does SPI address Medeco's points regarding the unfair competition claim.

All of SPI's state law claims arise out of the same 1989 confidentiality agreement. SPI does not contend, nor has it produced any evidence, that the confidential information that was allegedly misappropriated in this case is any different from that alleged to be misappropriated in the prior litigation. In fact, the declaration of SPI's president indicates that the confidential information at issue in both cases is the same. SPI does not acquire a new claim every time Medeco commits an alleged act of misappropriation with respect to information covered by the original relationship which was allegedly breached. Subsequent acts of misappropriating the same information constitutes the same claim.

The court therefore grants Medeco's motion for summary judgment on the state law claims for misappropriation of trade secrets, breach of contract and unfair competition. They are the same claims alleged in the prior lawsuit, even though regarding earlier products, and were released by the prior settlement agreement between SPI and Medeco.

### IV.

Medeco also moves for summary judgment on SPI's patent infringement claim (claim 4), arguing that the claim is barred by collateral estoppel. That is, in the first case the court granted Medeco's summary judgment motion, construing SPI's patent claims and finding that Medeco's VLS product did not infringe the patent. The same '043 patent is at issue in the present case. And as stated, at oral argument the parties agreed that defendant's PMLS product is the same as the VLS for purposes of infringement analysis.

■■ Collateral estoppel, or issue preclusion, bars the re-litigation of issues actually adjudicated in previous litigation between the same parties. *Kamilche Co., v. United States,* 53 F.3d 1059, 1062 (9th Cir.1995). As the party asserting collateral estoppel, Medeco must show: (1) the same issue of fact or law; (2) was actually litigated and determined in the former proceeding; (3) the issue was actually decided by a valid and final judgment; (4) the determination of the issue was necessary to the judgment; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Id.*

SPI does not contest that these five factors are present here, except for number three, whether there was a "valid and final judgment." Before turning to that issue, the court notes that Medeco has demonstrated the other four factors.

There is no question that the same issues of claim construction are present in this action as were present in the prior action. The court interpreted the '043 patent claims as a matter of law, and expressly delineated the key terms. And the

court held that Medeco's VLS did not infringe the '043 patent.

It is clear from the record presented to this court that those issues were actually litigated by parties and conclusively determined by the court in the first case. The record in that case demonstrates that the issues were fully briefed, that the parties submitted expert testimony in support of their arguments, and that the court held a hearing on the issues.

The issues of claims construction and infringement were necessary to the summary judgment order granted by the court. The record again demonstrates that both parties had a full and fair opportunity to litigate the patent issues. It is undisputed that SPI was represented by counsel in the first case, and SPI's counsel filed extensive briefs and a record regarding the issues.

■ This court then turns to the one disputed factor of collateral estoppel; that is, whether the prior decision was a "valid and final judgment." A disposition by summary judgment is a decision on the merits, and it is as final and conclusive as a judgment after trial. *Kamilche Co. v. United States*, 809 F.Supp. 763, 767 (N.D.Cal.1992) *rev'd on other grounds*, 53 F.3d 1059 (9th Cir.1995).

■ Medeco argues that the subsequent settlement did not remove the validity or preclusive effect of the court's summary judgment order. In *Bates v. Union Oil Co. of California*, 944 F.2d 647 (9th Cir. 1991), the Ninth Circuit rejected the argument that a settlement and agreement to vacate a decision deprived the judgment of preclusive effect. *Id.* at 650. The Ninth Circuit reasoned that "to hold otherwise would be to approve of a rule which would deny preclusive effect to a judgment simply because it was vacated." *Id.*

SPI argues that the order was an interlocutory order and not a final judgment, and that it therefore cannot have preclusive effect. For this proposition, SPI relies on Fed.R.Civ.P. 54(b). But SPI's reliance on Rule 54(b) is misplaced for purposes of a collateral estoppel analysis. Rule 54(b) defines a judgment for purposes of an appeal. Further, Ninth Circuit case law holds that "to be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291." *See Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir.1983). Instead, a final judgment for purposes of collateral estoppel is any prior adjudication of an issue in another action that is determined to be "sufficiently firm" to be accorded preclusive effect. *Id.*

Further, the Ninth Circuit has set forth a number of factors which should be considered in determining whether a prior adjudication is "sufficiently firm" to be accorded conclusive effect: (1) whether the decision was not avowedly tentative, (2) whether the parties were fully heard, (3) whether the court supported its decision with a reasoned opinion, and (4) whether the decision was subject to an appeal. *Id* at 1040, *citing* Restatement 2nd of Judgments, § 13.

In considering these factors, it is clear that the prior order here was sufficiently firm to be considered a final judgment. The language of the order indicates that the decision was not tentative. Also, the record demonstrates that both SPI and Medeco were afforded ample opportunity to be fully heard on the issues. While SPI may disagree with the first court's ruling, the court supported its decision with a reasoned opinion, issuing a 16–page order setting forth its reasons.

SPI next contends that the court's summary judgment order lacks preclusive effect because the parties agreed to vacate it. It was not vacated by the court. SPI acknowledges the *Bates* holding that even a vacatur by the court would not end its effect. But SPI argues that this court should not follow *Bates* because "no other circuit ascribes to the decision of *Bates*." But this court is bound to follow Ninth Circuit law. SPI also argues that the *Bates* holding is inapplicable because *Bates* involved a final judgment, not an interlocu-

tory order. As explained above, to be "final" for collateral estoppel purposes, a decision need not possess finality in the sense of 28 U.S.C. § 1291.

Finally, SPI argues that if this court applied the *Bates* balancing test then the balance favors SPI. SPI argues that it "expressly negotiated" the vacatur of the summary judgment order as part of the settlement agreement. But there is no support for this argument. Indeed, SPI's argument is contradicted by the language of the settlement agreement. Paragraph 8.1 of the settlement agreement provides

> Medeco agrees that it will stipulate to an order to vacate the ORDER filed April 27, 1995, granting Medeco's motion for partial summary judgment by signing the stipulation of Attachment F hereto for submission to Judgment Chesney and/or Judge Lynch. *All parties understand that the requested Order vacating the judgment may or may not be entered by the court but nonetheless, the terms and obligations of this Agreement shall remain in effect.* (emphasis added).

This court therefore concludes that the five factors for collateral estoppel defined by *Kamilche* are present here. SPI is collaterally estopped from relitigating its infringement claims regarding the same '043 patent.

### V.

For the reasons stated above, summary judgment is granted in favor of defendant Medeco and against plaintiff SPI on all four causes of action.