**APPLIED MEDICAL RESOURCES CORPORATION, Plaintiff,**

v.

**UNITED STATES SURGICAL CORPORATION, Defendant.**

**No. CV 03–1267 CJC(MLGX).**

United States District Court, C.D. California, Southern Division.

Jan. 14, 2005.

Bert C. Reiser, David W. Long, William K. West, Jr., Howrey Simon Arnold & White, Washington, DC, Brian C. Horne, Joseph F. Jennings, Joseph R. Re, Karen Vogel Weil, Valerie L. Bracken, Knobbe Martens Olson and Bear, Gregory S. Cordrey, Howrey Simon Arnold & White, Irvine, CA, David L. Bilsker, Howrey Simon Arnold & White, San Francisco, CA, Robert P. Taylor, Howrey Simon Arnold & White, Menlo Park, CA, Karen A. Gibbs, Applied Medical Resources Legal Department, Rancho Santa Margarita, CA, for Plaintiff.

Bradford J. Badke, David F. Owens, Harvey Kurzweil, Kristopher M. Dawes, Lisa B. Deutsch, Dewey Ballantine, New York, NY, Donald L. Morrow, Paul Hastings Janofsky & Walker, Costa Mesa, CA, Fred H. Bartlit, Jr., Glen E. Summers, Bartlit Beck Herman Palenchar & Scott, Denver, CO, Jill Rochelle Trumbull–Harris, Bartlit Beck Herman Palenchar and Scott, Chicago, IL, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT REGARDING COLLATERAL ESTOPPEL

CARNEY, District Judge.

Plaintiff Applied Medical Resources Corp. ("Applied") seeks partial summary judgment that Defendant United States Surgical Corp. ("U.S.Surgical") is collaterally estopped from relitigating the validity of Claim 18 of U.S. Patent No. 5,385,553 ("the '553 Patent"). The Court concludes Applied is entitled to such a judgment.[1] The issue of the validity of Claim 18 of the '553 Patent was vigorously litigated and ultimately determined in the parties' previous lawsuit in the Eastern District of Virginia. Consequently, U.S. Surgical cannot now resurrect and relitigate the issue in this lawsuit, even if there are new arguments that U.S. Surgical wants to raise that were not made in the parties' prior lawsuit.

## I. THE RELEVANT FACTUAL BACKGROUND[2]

### A. THE HISTORY BETWEEN THE PARTIES

### 1. THE FIRST LAWSUIT: *APPLIED I*

In August of 1996, Applied sued U.S. Surgical in the Eastern District of Virginia for infringement of the '553 Patent and two other patents (*"Applied I"*). *See Applied Medical Resources Corp. v. United States Surgical Corp.*, 967 F.Supp. 861 (E.D.Va.1997). The infringement allegations were based in part on U.S. Surgical's manufacture and sale of the Versaport, a trocar used for laparoscopic surgery. Ap-

plied asserted infringement of Claims 4 and 18 of the '553 Patent. *Id.* As part of its defense, U.S. Surgical argued the asserted claims of the '553 Patent were invalid. Specifically, in its Answer and during pretrial proceedings, U.S. Surgical contended a variety of grounds for the alleged invalidity of the asserted claims of the '553 Patent, including anticipation, obviousness, indefiniteness and failure to disclose the best mode. Ex. A (Answer, September 23, 1996) at 6; Ex. K (Expert Report of Ronald Luther) at ¶ 85.

*Applied I* was tried before a jury over a 14–day period. During the trial, both parties presented testimonial and documentary evidence of the alleged infringement and alleged invalidity of the '553 Patent. At the conclusion of the evidence, arguments of counsel, and the Court's instructions, the matter was submitted to the jury. The *Applied I* jury answered "No" to the special interrogatories directed to the validity of Claim 18 of the '553 Patent:

    a. Has U.S. Surgical met its burden of proving by clear and convincing evidence that Claim 18 of the '553 patent is anticipated by the prior sale of the 5mm Endoport seal? (Interrogatory No. 2);

    b. Has U.S. Surgical met its burden of proving by clear and convincing evidence that Claim 18 of the '553 patent is invalid because it fails to disclose the best mode of practicing the claimed invention? (Interrogatory No. 4);

    c. Has U.S. Surgical met its burden of proving by clear and convincing evidence that Claim 18 of the '553 patent is anticipated by a public use of Applied's Sureseal valve more than one year be-

---

**1.** On December 7, 2004, having read and considered the papers, and all evidence and argument submitted by the parties, the Court issued a *Minute Order* granting Applied's motion. The Court now hereby issues this Order, detailing the factual background and the legal reasoning of the Court in granting Applied's motion.

**2.** The relevant factual background is not in dispute. Unless otherwise indicated, all cited exhibits were attached to the Declaration of Joseph F. Jennings, submitted by Applied.

fore the effective filing date of the '553 patent application? (Interrogatory No. 7); and

d. Has U.S. Surgical met its burden of proving by clear and convincing evidence that Claim 18 of the '553 patent is anticipated by or [sic] a description in a printed publication of Applied's Sureseal valve more than one year before the effective filing date of the '553 patent? (Interrogatory No. 8).

See Ex. B (*Applied I* Judgment) and Ex. I (Interrogatories to the Jury) at 4–5, Section VI.

The Versaport was found to infringe Claim 18 of the '553 Patent. Ex. J (*Applied I* Injunction). The District Court denied each of U.S. Surgical's motions for judgment as a matter of law and entered judgment that Claims 4 and 18 of the '553 Patent were "valid and infringed." Ex. B (*Applied I* Judgment). Based on the jury verdict, damages were awarded to Applied and the District Court entered an injunction prohibiting U.S. Surgical from "making, using, offering to sell and selling" the infringing trocars. Ex. J (*Applied I* Injunction).

Following U.S. Surgical's appeal of the *Applied I* judgment, the Federal Circuit affirmed. *Applied Medical Resources Corp. v. United States Surgical Corp.*, 147 F.3d 1374 (Fed.Cir.1998). The United States Supreme Court denied U.S. Surgical's petition for a *writ of certiorari. United States Surgical Corp. v. Applied Medical Resources Corp.*, 525 U.S. 1104, 119 S.Ct. 870, 142 L.Ed.2d 772 (1999).

## 2. THE SECOND LAWSUIT: APPLIED II

Following the jury verdict in *Applied I*, U.S. Surgical introduced a re-designed floating seal trocar, also referred to as the Versaport. In April of 1999, Applied filed suit in this Court, alleging the re-designed Versaport infringed Claims 3 and 18 of the '553 Patent ("*Applied II*"). In its Answer, U.S. Surgical again asserted an affirmative defense challenging the validity of the '553 Patent. Ex. H (Answer, May 24, 1999).

After intensive briefing, the Court denied summary judgment of infringement as to Claim 18, finding the existence of genuine issues of material fact. Ex. C (Summary Judgment Order, July 10, 2000). In its Summary Judgment Order, the Court also concluded U.S. Surgical was collaterally estopped from raising any challenge as to the validity of the '553 Patent. On February 26, 2002, the Court granted Applied's motion for summary judgment that U.S. Surgical literally infringed Claim 3 of the '553 Patent. Ex. D (Summary Judgment Order, February 26, 2002). By Minute Order, the Court also denied U.S. Surgical's Motion for Invalidity of the '553 Patent, finding U.S. Surgical collaterally estopped from asserting the invalidity of Claim 3. Ex. L (Minute Order, February 26, 2002). On October 15, 2003, the Court issued an order enjoining U.S. Surgical from further infringement. Minute Order, October 15, 2003, SACV 99–0625 CJC (MLGx), docket # 488. Following U.S. Surgical's appeal, the Federal Circuit, without an opinion, affirmed the district court's rulings. Ex. E (Federal Circuit's Rule 36 Affirmance, September 11, 2003).

A jury trial on the issue of damages for U.S. Surgical's infringement of Claim 3 of the '553 Patent was held in this Court beginning July 14, 2004.[3] The jury awarded $43.5 million to Applied and found U.S. Surgical's infringement of Claim 3 to be willful. Jury Verdict Form, SACV 99–0625 CJC (MLGx), docket # 820. The

---

**3.** Following the finding of validity and infringement of Claim 3, Applied did not pursue further its claims related to Claim 18 of the '553 Patent.

Court then used its discretion and enhanced the damages by 25 percent. Minute Order, October 1, 2004, SACV 99–0625 CJC (MLGx), docket # 856.

## B. THE PRESENT LAWSUIT: *APPLIED III*

The current action, filed in July of 2003, represents the third lawsuit initiated by Applied against U.S. Surgical for infringement of the '553 Patent ("*Applied III*"). Upon entry of the injunction in *Applied II*, U.S. Surgical introduced another re-design of its trocar, referred to as the Versaport Plus. Claim 18 of the '553 Patent is the only patent claim at issue in this lawsuit. In its Answer, U.S. Surgical has asserted an affirmative defense of patent invalidity. Specifically, U.S. Surgical's Answer alleges: "Certain claims of the '553 Patent are invalid because they fail to comply with the requirements of the patent laws of the United States, including without limitation sections 102, 103 and 112 of Title 35 of the United States Code." Ex. F. (Answer, September 22, 2003).

As stated above, on November 15, 2004 Applied moved for summary judgment that, based upon the judgment in *Applied I*, U.S. Surgical is barred by collateral estoppel from relitigating the issue of whether Claim 18 of the '553 Patent is valid.[4]

4. The parties' dispute concerning application of collateral estoppel to this matter actually arose in the context of discovery. On July 27, 2004, U.S. Surgical filed, before Magistrate Judge Marc L. Goldman, a motion to compel Applied to answer U.S. Surgical's Interrogatory No. 12. This interrogatory was relevant only to the issue of validity of the '553 Patent. Magistrate Goldman denied U.S. Surgical's motion, finding that because the information sought by U.S. Surgical related only to validity, an issue that was conclusively adjudicated between the parties in a prior lawsuit, the discovery was not relevant to a viable claim or defense in the case (Minute Order, September 21, 2004, Docket # 103). Disagreeing with Magistrate Goldman's decision, U.S. Surgical filed a motion for review of the Order before this Court on October 6, 2004. Because of the dispositive nature of rendering a decision on the application of collateral estoppel to this case, the Court issued a Minute Order on October 28, 2004 requesting that the parties brief the matter as a motion for summary judgment (Minute Order, October 28, 2004, docket # 113). In accordance with the Court's Minute Order, Applied filed the current Motion for Partial Summary Judgment.

## II. STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 56(c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Upon a showing that there is no genuine issue of material fact as to a particular claim or defense, a court may grant summary judgment in the party's favor "upon all or any part thereof." Fed.R.Civ.P. 56(a). Determination of a motion for summary judgment is appropriate when the parties raise only questions of law, the resolution of which does not involve disputed material facts. *Delbon Radiology v. Turlock Diagnostic Center*, 839 F.Supp. 1388, 1391 (E.D.Cal.1993). The applicability of collateral estoppel in this case is a pure issue of law that does not involve any disputed facts. *Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1020 (9th Cir.2001).

## III. APPLICATION OF COLLATERAL ESTOPPEL IS APPROPRIATE

### A. THE ISSUE OF INVALIDITY OF THE '553 PATENT HAS ALREADY BEEN LITIGATED

Collateral estoppel, also referred to as issue preclusion, bars the relitigation of

an issue actually adjudicated in previous litigation between the same parties. Stated differently, "[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir.1995). The rationale underlying the doctrine is that a party who has litigated an issue and lost should be bound by that decision and cannot demand that the issue be decided a second time. *In re Freeman*, 30 F.3d 1459, 1465 (Fed.Cir. 1994). Therefore, collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (*citing Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)).

■ In order for a prior decision to have collateral estoppel effect, the issue at stake in the current litigation must be identical to the one alleged in the prior litigation.[5] *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992). The

party seeking application of collateral estoppel bears the burden of showing, with clarity and certainty, what was determined by the prior judgment. *Id.* If there is any doubt as to its appropriateness, collateral estoppel should not be applied. *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980).

■ U.S. Surgical contends the verdict in *Applied I* dealt with only four issues: anticipation by prior sale, best mode, public use, and prior publication. According to U.S. Surgical, these were the only "issues" decided by the jury in a prior adjudication and additional viable invalidity defenses exist.[6] In contrast, Applied asserts U.S. Surgical is mixing the concepts of "arguments" and "issues" and is defining the concept of "issue" too narrowly for purposes of collateral estoppel. According to Applied, invalidity is the issue that was previously litigated, and U.S. Surgical cannot avoid this in the guise of asserting new arguments.

■ In evaluating the application of collateral estoppel, reference to Restatements (Second) of Judgments is appropriate. *Foster v. Hallco Manuf. Co., Inc.*, 947 F.2d 469, 480 (Fed.Cir.1991); *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir.1995). The Restatements identifies four factors to be considered in determining whether an issue in a successive

---

5. In addition to the issue at stake in the two litigations being identical, the issue must have been actually litigated in the prior litigation and the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment of the earlier action. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir.1992). The only point of contention between the parties here is whether the issue decided in *Applied I* is identical to the issue presented here in *Applied III*. The parties do not dispute that, if the issue decided in *Applied I* is defined as "invalidity of Claim 18," then the issue was actually litigated and its determination was a necessary part of the judgment.

6. In connection with its Opposition to Applied's Motion for Summary Judgment, U.S. Surgical proffered a declaration from its technical expert, Dr. J. Michael McCarthy, asserting that Claim 18 of the '553 Patent is invalid on two grounds not asserted in *Applied I*: (1) anticipation by U.S. Patent No. 5,209,736, and (2) obviousness in view of the prior art described by the inventors of the '553 Patent, in combination with U.S. Patent No. 4,588,-195. *See* Declaration of J. Michael McCarthy Regarding Invalidity of the '553 Patent, submitted by U.S. Surgical.

proceeding is identical to an issue previously litigated: (1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first; (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding; (3) could the pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second; and (4) how closely related are the claims involved in the two proceedings. *Kamilche*, 53 F.3d at 1062. Applying these four factors leads the Court to conclude that the issue decided in *Applied I* (alleged invalidity of Claim 18) and the issue presented here in *Applied III* (alleged invalidity of Claim 18) are indeed identical. Any new theories of invalidity would require presentation of substantially the same evidence that was presented in *Applied I*: comparison of prior art to Claim 18, all done through the lens of one of ordinary skill in the art. The second Restatements factor also is present since the invalidity defenses all arise from 35 U.S.C. § 282, although the specific grounds are listed separately. The principles underlying invalidity challenges are fundamentally similar: they require proof by clear and convincing evidence that a claimed invention is not patentable. The third Restatements factor also militates in favor of deeming invalidity a single issue because discovery and pretrial preparation would reasonably have been expected to embrace all invalidity arguments, and not just those pursued by U.S. Surgical before the jury in *Applied I*. "Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." *Yamaha Corp. of Am. v. United States,* 961 F.2d 245, 254–255 (D.C.Cir.1992), *cert. denied,* 506 U.S. 1078, 113 S.Ct. 1044, 122 L.Ed.2d 353 (1993). Finally, the claims involved in the two proceedings, infringement of Applied's patent by U.S. Surgical's Versaport-line of trocars, clearly are "closely related."

Ultimately, U.S. Surgical fails to recognize that "'once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.'" *Kamilche*, 53 F.3d at 1063 (*quoting Yamaha Corp. of Am.*, 961 F.2d at 254)(emphasis in original). The Ninth Circuit's analysis in *Kamilche* is instructive. In *Kamilche*, the Ninth Circuit confronted the question of whether a prior judicial determination of ownership of one portion of real property collaterally estopped the United States from challenging title to the entire property. *Id.* at 1060. Specifically, the disputed property was a 161.49 acre strip of land. *Id.* In a prior condemnation proceeding for 3.49 acres within the 161.49 acre strip, the United States had lost arguments that a certain land survey (which rendered ownership in the State of California rather than Plaintiff) applied. *Id.* at 1061. In *Kamilche*, Plaintiff contended the court's determination in the prior condemnation proceedings collaterally estopped the United States from challenging his ownership to the entire 161.49 acres. According to Plaintiff, implicit in the prior court's conclusion that Plaintiff owned the 3.49 acres within the 161.49 acre strip was the conclusion that Plaintiff owned the entire 161.49 acres. *Id.* at 1061–1062. The Ninth Circuit agreed. *Id.* at 1062. According to the Ninth Circuit, what was being decided in both matters was ownership of the property; that before the United States sought to argue ownership based on a land survey and now decided to put forth the argument of adverse possession was irrelevant. As stated by the Court, "[t]he only difference between the two cases is that here, the United States asserts ownership by adverse possession. Pretrial preparation and discovery could

have been expected to embrace this argument. Ultimately, '[o]nly the connecting argument between these two assertions differ.'" *Id.* (*quoting Starker v. United States,* 602 F.2d 1341, 1345 (9th Cir.1979)). The Court went on to deem irrelevant the United States' argument that adverse possession was never raised in the prior condemnation case, noting that "'[a]ny contention that is necessarily inconsistent with a prior adjudication of a material and litigated issue ... is subsumed in that issue and precluded by the effect of the prior judgment as collateral estoppel.'" *Id.* at 1063 (*quoting* 1B Moore's Federal Practice ¶ 0.443[2] ).

Similar to the government's attempt to focus on a new argument (adverse possession) to determine land ownership in *Kamilche,* here U.S. Surgical seeks to assert new arguments to assert invalidity. This is inappropriate: "'if the party against whom preclusion is sought did in fact litigate an issue ... and suffered an adverse determination ... new arguments may not be presented to obtain a different determination of that issue.'" *Id.* (*quoting* Restatements (Second) of Judgments § 27).

This Court's conclusion is in accord with other courts that have held validity, in the patent context, is a single issue for purposes of collateral estoppel. *See Zip Dee, Inc. v. Dometic Corp.,* 905 F.Supp. 535, 537–538 (N.D.Ill.1995); *Pall Corp. v. Fisher Scientific Co.,* 962 F.Supp. 210, 213 (D.Mass.1997); *Advanced Display Sys. v.*

*Kent State University,* 2002 WL 1489555, at \*10, 2002 U.S. Dist. LEXIS 12575, \*37 (N.D.Tex.); *Unique Coupons v. Northfield,* 2000 WL 631324, \*1 (N.D.Ill.).

The Court is not persuaded by U.S. Surgical's argument that the Federal Circuit would reach a contrary conclusion because of the strong policy in favor of allowing challenges to the validity of patents. In *Foster v. Hallco Manuf. Co.,* the Federal Circuit contrasted two public policies, one favoring final determination of cases and settlement and another directed towards preventing the exercise of monopoly power by virtue of invalid patents. Specifically, the Court addressed the issue of whether the patent policy expressed by the Supreme Court in *Lear v. Adkins* (395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969)) overrode the *res judicata* effect of a consent decree declaring a patent valid. *Foster,* 947 F.2d at 474. The Federal Circuit concluded that "general principles of *res judicata* apply, despite the policies favoring challenges to validity expressed in *Lear*." In other words, while acknowledging the important policy espoused in *Lear* that the validity of patents should be subject to attack, even by licensees of the patent, the Federal Circuit nonetheless concluded *res judicata* principles would apply to bar relitigation of a claim as to patent validity. The Court can discern no justification why a different result would ensue when balancing the policy justifications underlying collateral estoppel and challenges to patent validity.[7]

---

7. Moreover, the Court's conclusion is bolstered by the Federal Circuit's analysis of collateral estoppel in *Foster.* In *Foster,* the Court also addressed the collateral estoppel impact of a consent judgment intended to preclude any challenge to the validity of a particular patent, even in subsequent litigation. *Foster,* 947 F.2d at 480–481. More specifically, the Court analyzed the question of whether issue preclusion would apply when the parties had entered into a consent judgment declaring the patent valid in the previous litigation. While acknowledging that such consent judgments must be narrowly construed, the Court concluded "if a consent judgment, by its terms, indicates that the parties thereto intend to preclude challenge to the validity of a particular patent, even in subsequent litigation involving a new cause of action, then that issue can be precluded." *Id.* at 480–481. Accordingly, if the parties may foreclose relitigation of patent invalidity by virtue of a consent judgment, the Court be-

Accordingly, the issue decided in *Applied I* is identical to the issue now sought to be relitigated in *Applied III*, and absent the showing of some unfairness, application of collateral estoppel is appropriate.

## B. APPLICATION OF COLLATERAL ESTOPPEL RESULTS IN NO UNFAIRNESS TO U.S. SURGICAL

■ Even if the elements of collateral estoppel are satisfied, special circumstances, such as doubt as to the quality, extensiveness or fairness of procedures followed in the first litigation may warrant an exception to the normal rules of preclusion. *Durkin v. Shea & Gould,* 92 F.3d 1510, 1515 (9th Cir.1996). In other words, for collateral estoppel to apply, the parties must have had a full and fair opportunity to litigate the claims at issue. *Id.* A court may deny application of collateral estoppel where the application would result in unfairness. *Luben Industries v. United States,* 707 F.2d 1037, 1039 (9th Cir.1983). Therefore, before collateral estoppel may be used, a party must be permitted to demonstrate that it did not have a "'fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.'" *Blonder–Tongue Laboratories, Inc. v. University of Illinois,* 402 U.S. 313 332, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (internal citation omitted).

U.S. Surgical argues application of collateral estoppel would be unfair in *Applied III* because it was denied a full and fair opportunity to litigate invalidity in *Applied I*. This unfairness, asserts U.S. Surgical, arises from the Federal Circuit's recent decision in *Knorr–Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337 (Fed.Cir.2004)) and the illness of its expert witness prior to trial. According to U.S. Surgical, during *Applied I* Applied was allowed to make

unfair use of an adverse inference related to U.S. Surgical's failure to timely waive the attorney-client privilege and disclose opinion letters related to the accused products. U.S. Surgical contends the Federal Circuit's decision in *Knorr* would render such an adverse inference reversible error. Moreover, U.S. Surgical posits the adverse inference, which would no longer be permissible, played a central role in all aspects of the *Applied I* trial.

The Court rejects U.S. Surgical's arguments. No unfairness exists here. In light of the large monetary amounts at issue and the importance of trocars to the business of both parties, U.S. Surgical had every incentive to litigate *Applied I* fully and vigorously. U.S. Surgical has not identified any procedural opportunities that were unavailable in *Applied I* that are likely to cause a different result or any substantive or evidentiary irregularities. Finally, the change in law in *Knorr* relates to the attorney-client privilege and willfulness, not to the invalidity of patents. There has been no showing the jury in *Applied I* misconstrued the law regarding invalidity, did not properly follow jury instructions, or was confused as to the technology. The Court will not disturb the validity determination made in *Applied I* because of an intervening change in unrelated law. As to U.S. Surgical's claims regarding the unfortunate illness of its expert witness, such matters were properly directed toward the trial court in *Applied I*. This Court will not second guess the decisions of that court.

## IV. CONCLUSION

In light of the foregoing, *Applied I* collaterally estops U.S. Surgical from chal-

lieves *actual litigation* of the issue must simi-

larly result in barring such relitigation.

lenging the validity of Claim 18 of the '553 Patent.