Joseph SEGAL, Plaintiff,

and

Western States Telephone Co., Inc.,
etc., Appellant,

v.

AMERICAN TELEPHONE AND
TELEGRAPH COMPANY, INC.,
etc., et al., Appellees.

No. 77–2788.

United States Court of Appeals,
Ninth Circuit.

Sept. 4, 1979.

As Amended Oct. 29, 1979.

Joel R. Bennett, Kendrick, Netter, Orr & Bennett, Los Angeles, Cal., on brief, for appellant; Richard C. Leonard, Beverly Hills, Cal., argued.

Donald K. King, Los Angeles, Cal., on brief, for appellees; Frank Rothman, Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal., argued.

Before TUTTLE,* HUFSTEDLER, and GOODWIN, Circuit Judges.

PER CURIAM:

Western States Telephone Company appeals from a summary judgment for the defendants in a treble-damage action based on alleged violations of the Sherman Act, 15 U.S.C. §§ 1 and 2. The district court held that principles of res judicata deprived the court of subject matter jurisdiction, and, alternatively, that the statute of limitations barred Western States' action. We affirm the district court's holding on the jurisdictional issue, but we vacate summary judgment and remand with directions to stay this antitrust case pending completion of the FCC proceedings.

In February 1964, Western States filed an antitrust complaint against defendants American Telephone & Telegraph Company (AT&T) and other telephone companies. Western States at that time sold "antique French" cradle phones that could be plugged into the jacks used by the defendant telephone companies to connect their own equipment to the telephone system. Western States contended that although its equipment was compatible for use in the system, defendants had conspired to prevent it from selling its telephones by filing tariffs that permitted only their own equipment to be used in the telephone network.

Defendants filed motions to dismiss or to stay the action, contending that the Federal Communications Commission (FCC) had primary jurisdiction of the questions raised by plaintiff's claims. The district court held that it had no jurisdiction to consider Western States' claims until the FCC had passed on them; it therefore dismissed the action. Plaintiff did not appeal the dismissal.

In May 1966, Western States discontinued its telephone business. In September of that year, it filed a complaint with the FCC (Docket No. 16883) containing the same allegations as in its district court complaint of two years earlier. The FCC took no action on Western States' complaint until October 1969, when it announced that it was deferring decision in the case pending completion of another proceeding.

In the meantime, the FCC had decided *In the Matter of Use of the Carterfone Device in Message Toll Telephone Service*, 13 F.C. C.2d 420 (1968), *reconsideration denied*, 14 F.C.C.2d 571 (1968). In *Carterfone*, the FCC invalidated the paragraphs of telephone companies' tariffs that prohibited the use of privately owned interconnection devices as supplements to telephone company equipment, declaring such devices permissible as long as they did not harm the system. The Department of Justice had intervened in the *Carterfone* case, claiming that the paragraphs of the tariff under attack violated the antitrust laws.

In response to *Carterfone*, AT&T filed new tariffs with the FCC. These tariffs were challenged on the ground that they did not permit customers to substitute their own telephones for those provided by AT&T, a point alleged to be contrary to *Carterfone*. The FCC declined to suspend the tariffs, noting that *Carterfone* had held only that supplementary devices could not be outlawed, and that its holding did not apply to substitute equipment like telephones. *In the Matter of American Telephone & Telegraph Co. (AT&T) "Foreign Attachment" Tariff Revisions in AT&T Tariff FCC Nos. 263, 260 and 259*, 15 F.C. C.2d 605, 609–10 (1968), *reconsideration denied*, 18 F.C.C.2d 871 (1969) (hereinafter *Foreign Attachment*). AT&T was allowed to file the tariff, but rather than approve it the agency ordered a series of "informal technical and engineering conferences" on the use of customer-owned telephones as replacements for telephone company equipment. *Id.* at 610.

The Justice Department filed a petition with the FCC, asking it to reconsider its order because the informal conferences were too time-consuming, and to initiate instead a formal investigation. The FCC

---

* Honorable Elbert P. Tuttle, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

refused to do so. *Foreign Attachment,* 18 F.C.C.2d at 873. It was at this point that the FCC announced that it was deferring action on Western States' complaint, as noted above, pending informal resolution of the questions raised in *Foreign Attachment. In the Matter of Western States Telephone Co.,* 19 F.C.C.2d 1068 (1969).

In 1971, after the FCC had taken no action on its claims, Western States returned to the district court. Contending that the original dismissal was based on the court's erroneous assumption that the FCC would exercise its primary jurisdiction within a reasonable time, Western States asked the court to vacate its earlier judgment of dismissal. The district court refused. The judge suggested that if the FCC was moving too slowly plaintiff should seek an extraordinary writ.

In July 1972, the FCC issued a Notice of Inquiry (Docket No. 19528) concerning the use of customer-owned telephones, the subject on which it had ordered the informal conferences. *In the Matter of Proposals for New or Revised Classes of Interstate and Foreign Message Toll Telephone Service (MTS) and Wide Area Telephone Service (WATS),* 35 F.C.C.2d 539 (1972) (hereinafter *MTS and WATS*). The Justice Department filed "reply comments" in Docket No. 19528 in January 1974. In November 1975, the FCC released its First Report and Order in Docket No. 19528, holding that, subject to certain FCC regulations, customer-owned equipment could be connected directly into the telephone system. *MTS and WATS,* 56 F.C.C.2d 593 (1975).

The FCC decision in Docket No. 19528 cleared the way for companies that sold telephone instruments to compete with the defendant telephone companies. It did not, however, dispose of Western States' administrative complaint. On the same day that decision was announced, Western States filed its antitrust complaint in the instant case in the district court.[1]

1. The district court complaint was amended in September 1976. In October 1976, Western States also petitioned for a writ of mandamus in the U. S. Court of Appeals for the District of Columbia Circuit. The D.C. Circuit ordered the

## II.

■ Western States does not dispute that its 1975 action presents the same claims as the one dismissed in 1964 for lack of jurisdiction. Because the same claims had been dismissed in 1964 for failure to exhaust FCC procedures, and because the FCC had not completed its proceedings on Western States' claims, the court in this case held that the company was barred from bringing its court action again until the FCC had completed its action on Western States' complaint.

The district court correctly decided that res judicata foreclosed its reconsideration of the prior judgment and therefore correctly refused to entertain the action for want of jurisdiction of the subject matter until the FCC, with primary jurisdiction, had concluded its consideration of Western States' administrative complaint. However, res judicata principles do not apply to require dismissal of this action rather than a stay pending completion of the FCC proceedings.

■ Although a judgment of dismissal for lack of jurisdiction is valid and final, the judgment does not bar another action by the plaintiff on the same claim. *Hughes v. United States,* 4 Wall. (71 U.S.) 232, 18 L.Ed. 303 (1866); *Acree v. Airline Pilots Association,* 390 F.2d 199 (5th Cir. 1968); Restatement, 2d, Judgments (T.D. No. 1 1973) § 48.1; 1B J. Moore, Federal Practice (2d ed. 1974) ¶ 0.405[5] pp. 659–62. *See also* Fed.Rules Civ.Proc., Rule 41(b); *Costello v. United States,* 365 U.S. 265, 285, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *Weston Funding Corp. v. Lafayette Towers, Inc.,* 410 F.Supp. 980, 984 (S.D.N.Y.1976), *affirmed,* 550 F.2d 710 (2d Cir. 1977).

■ The aspect of res judicata with which we are concerned is issue preclusion, formerly denominated "direct estoppel." Restatement, Judgments § 49, Comment *b*

FCC to begin proceedings on Western States' claim within 90 days. At the time of this appeal, the FCC had still not resolved Western States' claims against AT & T.

(1942); "Developments in the Law—Res Judicata," 65 Harv.L.Rev. 818, 835, 836 n.121 (1952). Issue preclusion, unlike bar, forecloses litigation only of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment between the parties, whether on the same or a different claim. *Lawlor v. National Screen Service,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1876); *Russell v. Place,* 94 U.S. 606, 24 L.Ed. 214 (1876); Restatement, 2d, Judgments, § 68 (T.D. No. 1 1973).[2]

■ The 1964 judgment prevented relitigation of the subject matter jurisdiction issue in a subsequent suit so long as the precondition to federal court jurisdiction remained unsatisfied. "A valid and final personal judgment for the defendant which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law, or the circumstances are such that it would be manifestly unfair to subject the defendant to such an action." Restatement, 2d, Judgments, § 48.1(2) (T.D. No. 1 1973).

■ At the time the district court decided the initial action, the law of our Circuit required the district court to dismiss an action within the primary jurisdiction of an agency, rather than to retain jurisdiction over it. *Carnation Co. v. Pacific Westbound Conference,* 336 F.2d 650 (9th Cir. 1964). After the first judgment was rendered, however, the Supreme Court overturned *Carnation,* holding that the proper remedy was staying the action while administrative proceedings were pending, unless dismissal would not prejudice the plaintiff's right to obtain antitrust relief at an appropriate time. *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966). Issue preclusion does not compel reapplication of a remedy since held erroneous as a matter of law. In the first place, the propriety of the remedy of dismissal was not actually litigated in the earlier case. Western simply bowed to the inevitable, under the prevailing law of the Circuit, without contesting the propriety of the remedy. Moreover, even if Western had litigated that issue of law, it would not be foreclosed by relitigation of the issue in the second action between the parties because "(b) [t]he issue is one of law and . . . (ii) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; . . . ." Restatement, 2d, Judgments, *supra,* § 68.1. Although the terms of the formulation of the rule expressed in section 68.1 are new, the underlying concepts have been established for many years before the first judgment was rendered in this case. Issue preclusion has never been applied to issues of law with the same rigor as to issues of fact. *E. g., United States v. Moser,* 266 U.S. 236, 242, 45 S.Ct. 66, 69 L.Ed. 262 (1924) (res judicata inapplicable to "unmixed questions of law"); *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (issue preclusion of question of law inapplicable in successive tax cases between same parties after intervening change in the "legal climate" or need to avoid inequitable administration of the laws); *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (state court decision of federal constitutional claims not res judicata in subsequent action by abstaining federal court). *See*

---

2. For the purpose of issue preclusion (collateral estoppel) it has been settled since the decision in the *Dutchess of Kingston's Case,* 20 How. St.Tr. 355 (1776), that relitigation of an issue presented and decided in a prior case is not foreclosed if the decision of the issue was not necessary to the judgment reached in the prior litigation. *Cromwell v. County of Sac, supra,* 94 U.S. 351, 24 L.Ed. 195; *Radford v. Myers,* 231 U.S. 725, 34 S.Ct. 249, 58 L.Ed. 454 (1914); *Landon v. Clark,* 221 F. 841 (2d Cir. 1915). *See generally* Scott, "Collateral Estoppel by Judgment," 56 Harv.L.Rev. 1 (1942); Note, "Developments in the Law—Res Judicata," 65 Harv.L. Rev. 818, 842–43 (1952).

*also* 1B J. Moore, *supra*, ¶ 0.415, pp. 2051–58 ("Effect of changed circumstances"); *id.* at ¶ 0.405[12], pp. 787–91.

The res judicata doctrine is highly technical, often harsh, but not foolish. The policy underlying res judicata is "to secure the peace and repose of society by the settlement of matters capable of judicial determination," *Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897), to prevent unnecessary vexing of the winning party and to avoid undue burdening of the litigation process and of the courts. Dismissing rather than staying an action within the primary jurisdiction of an administrative agency was not intended to end litigation between the parties; rather, the intent was to permit the litigation to continue in another forum withholding federal jurisdiction to clean up the leftovers, if any. *Carnation Co. v. Pacific Westbound Conference*, *supra*, 383 U.S. at 221–22, n.4, 86 S.Ct. 781. The choice of remedy, dismissing or staying, was not designed to foreclose an antitrust plaintiff from ever getting his day in federal court after the precondition to federal court jurisdiction was fulfilled. *Ibid.*

### III.

Because the district court did not have any jurisdiction over the subject matter, it could not reach the substantive question whether the statute of limitations had run on Western's claims, barring them forever. When the jurisdictional impediment to federal district court jurisdiction is removed, the parties can return to the district court to obtain an adjudication on the limitations and tolling issues.

The judgment is vacated and the cause is remanded to the district court with directions to stay all further proceedings until the FCC finally determines Western States' pending administrative claims.