### RESOLUTION TRUST CORPORATION, Plaintiff–Appellee,

v.

### Charles H. KEATING, Jr., Defendant–Appellant.

**Resolution Trust Corporation, Plaintiff–Appellee,**

v.

**Mary Elaine Keating; Charles H. Keating, Jr., Defendants–Appellants.**

**Nos. 94–15989, 94–16956.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1997

Submission withdrawn March 25, 1998

Resubmitted July 30, 1999

Filed Aug. 6, 1999

---

Charles H. Keating, Jr., Pro Se, Tucson, Arizona, Mary Elaine Keating, Pro Se, Paradise Valley, Arizona, Stephen C. Neal, Palo Alto, California, for the defendants-appellants.

Michael C. Manning and Kristin L. Farnen, Morrison & Hecker, Phoenix, Arizona, for the plaintiffs-appellees.

Before: HUG, Chief Judge, THOMPSON and KLEINFELD, Circuit Judges.

HUG, Chief Judge:

Charles Keating, Jr., appeals the district court's entry of summary judgment in favor of the Resolution Trust Corporation. The district court concluded that judgments in three prior proceedings foreclosed Keating from relitigating his liability in the instant action and entered judgment against Keating in the amount of $4,345,004,815.73. We must decide whether the doctrine of collateral estoppel or "issue preclusion" justifies the entry of summary judgment against Keating. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

### BACKGROUND

American Continental Corporation ("American Continental") was a publicly held company based in Phoenix, Arizona. Charles Keating, Jr., was American Continental's principal shareholder, its chief executive officer, and chairman of its board. American Continental acquired Lincoln Savings and Loan Association ("Lincoln"), a California based company, in 1984. On April 13, 1989, American Continental declared bankruptcy. The following day, the Federal Home Loan Bank Board (the "Board"), pursuant to a statutory grant of authority, appointed the Resolution Trust Corporation (the "RTC") as Lincoln's conservator. Subsequently, the Board made the RTC Lincoln's receiver.

The RTC brought this action, as the successor in interest to Lincoln, against Keating and others in federal district court for the District of Arizona. On April 6, 1990, the Judicial Panel on Multidistrict Litigation consolidated this case with several other actions brought against Keating in California, including *Shields v. Keating*, C.A. No. CV–89–2052 (SVW)(BX). *In re American Continental Corp./Lincoln Sav. & Loan Securities Litigation*, 130 F.R.D. 475, 476 (J.P.M.L.1990). Before the consolidated cases went to trial, the RTC moved for a separate trial and, eventually, the district court severed the instant action.

The RTC filed its Third Amended Complaint on October 24, 1991, alleging RICO violations and various state and common law theories. The RTC then moved for summary judgment against Keating on the following counts: Count I—Violating 18 U.S.C. § 1962(c); Count III—Violating 18 U.S.C. § 1962(d); Count VII—Common Law Fraud; Count VIII—Civil Conspiracy; and Count IX—Breach of Fiduciary Duties. In its motion for summary judgment, the RTC agreed to dismiss all other counts then pending against Keating if it prevailed on the motion. The RTC grounded its motion on the criminal conviction in *United States v. Keating*, No. CR 91–01021–MRP (C.D.Cal.1993), as well as the judgments rendered in *Lincoln Sav. & Loan Ass'n v. Wall*, 743 F.Supp. 901 (D.D.C.1990) ("*Wall*") and *Shields v. Keating (In re American Cont. Corp./Lincoln Savings & Loan Securities Litigation)*, MDL No. 834 (D.Ariz. Nov. 5, 1992) ("*Shields*"). The RTC argued that all issues material to Keating's liability in the present action were actually litigated and determined against Keating in the prior proceedings. As a matter of law, therefore, the RTC contended it was entitled to summary judgment against Keating.

On April 20, 1994, the district court entered an Order and Memorandum Opinion granting the RTC's motion for summary judgment. The court then entered judgment in the amount of $4,315,004,815.73 in

favor of the RTC against Keating on May 27, 1994. The district court also dismissed all other counts then pending against Keating, thereby concluding the litigation before that court. Keating's premature notice of appeal, filed May 18, 1994, is treated as if it was filed on May 27, 1994, after the district court entered the judgment. *See* FRAP 4(a)(2).

■ The RTC, pursuant to FRCP 59(e), filed a timely motion to amend or alter the judgment to include the marital estate of Mary Elaine Keating.[1] The district court initially denied the RTC's motion on August 3, 1994. Upon the RTC's Motion to Reconsider, on September 12, 1994, the court entered an order, which concluded that all of Keating's acts had been committed for the benefit of his marital estate and granted the RTC's Motion for Reconsideration. A separate amended judgment was entered on September 20, 1994. Keating and Mary Elaine Keating filed a timely notice of appeal from the amended judgment on October 14, 1994.[2]

## DISCUSSION

■ A grant of summary judgment is reviewed *de novo*. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Whether collateral estoppel, which is more accurately designated "issue preclusion," is available to a litigant is a question of law that we review *de novo*. *In re Russell*, 76 F.3d 242, 244 (9th Cir.1996). With regard to the use of offensive non-mutual collateral

estoppel in the federal courts, the Supreme Court has indicated that it is not precluded, but that trial courts should have broad discretion to determine when it should be applied. *Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

■ Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law if the same issue was determined in prior litigation. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir.1988). To invoke nonmutual offensive issue preclusion in this case, the RTC must prove that: (1) Keating was afforded a full and fair opportunity to litigate the issues in the prior actions; (2) the issues were actually litigated and necessary to support the judgments; (3) the issues were decided against Keating in final judgments; and (4) Keating was a party or in privity with a party in the prior proceedings. *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir.1992).

Here, the district court found that the doctrine of issue preclusion prevented Keating from further litigating his liability. The district court found that Keating's "criminal conviction alone provides a sufficient basis for entry of judgment on Counts I, III, VII, VIII and IX of the RTC's Third Amended Complaint." *Resolution Trust Corp. v. Keating (In re American Continental Corp./Lincoln Sav. & Loan Securities Litigation)*, MDL No. 834, 89–1509 at 6 (D. Ariz. April 25, 1994) (hereinafter "District Court Order"). The

1. Although Keating had already filed a notice of appeal, the district court is expressly granted the jurisdiction to entertain a timely motion under FRCP 59. *See* FRAP 4(a)(4) ("If a party timely files . . . [a motion under FRCP 59], the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion. . . . If a party files a notice of appeal after the court announces or enters a judgment-but before it disposes of any [such motion]-the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). The effect of a timely Rule 59 motion on a previously filed notice of appeal is that "[t]he appeal simply self-destructs." *Griggs v. Provident Consumer Discount Co.*,

459 U.S. 56, 61, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (*quoting* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 204.12[1], p. 4–65, n. 17 (1982)). Keating's first notice of appeal, which we treat as having been filed on May 27, 1994, was rendered ineffective.

2. Our jurisdiction stems from the notice of appeal filed October 14, 1994. The Keatings filed that notice within 30 days of the entry of the amended judgment. The October 14 notice therefore is timely. *See* FRAP 4(a)(4)(B)(ii) (A party intending to challenge an alteration or amendment of the judgment shall file a notice of appeal within 30 days of entry of the order disposing of the last such remaining motion.).

court found, in the alternative, that the litigation in *Wall* and *Shields* would also support summary judgment on the basis of issue preclusion. *Id.* at 6–7. We discuss each of these proceedings separately.

## I. *The Criminal Conviction*

Following the collapse of Lincoln, Keating was charged with and found guilty of numerous federal crimes, including violating 18 U.S.C. § 1962(c) and (d) and conspiring to defraud Lincoln. Keating appealed. A panel of our court remanded the case for the district court to determine whether there was a reasonable probability that extrinsic evidence affected the jury's verdict. *United States v. Keating*, 87 F.3d 1324 (9th Cir.1996) (unpublished disposition). We withdrew submission pending the outcome of the criminal proceeding.

 Pursuant to the remand order, the district court held an evidentiary hearing, vacated the judgment of conviction, and ordered a new trial. *United States v. Keating*, Nos. CR 91–1021–MRP, CR 92–0110–MRP at 1 (C.D.Cal. Jan. 10, 1997). Keating has recently pled guilty to wire fraud and concealment of assets with the intent to defeat the provisions of the bankruptcy code. *Id.* (C.D.Cal. Apr. 6, 1999). Keating stipulated that he directed Medena Home Loans of Utah, an American Continental subsidiary, to issue unsecured loans to insiders. *Id.* at Ex. A. Keating's conduct, as outlined in the criminal plea, is not included in Counts I, III, VII, VIII, or IX of the RTC's complaint. We cannot affirm the grant of summary judgment in favor of the RTC on the basis of Keating's original criminal conviction that was vacated, nor on the basis of the recent criminal conviction as the conduct outlined in the plea agreement is not related to the RTC's claims.

## II. *The Wall Litigation*

 When American Continental filed for bankruptcy, the Federal Home Loan Bank Board (the "Board"), pursuant to its statutory powers under 12 U.S.C. § 1464(d)(6)(A), appointed a conservator to operate Lincoln. *Wall*, 743 F.Supp. at 902–903. The Board decided to appoint a conservator after it concluded in an ex parte proceeding that Lincoln was " 'in an unsafe and unsound condition to transact business,' and that there had been a 'substantial dissipation of assets or earnings due to ... violations of law, rules, or regulations, or to any unsafe or unsound ... practices.' " *Id.* at 903 (quoting 12 U.S.C. § 1464(d)(6)(A)) (footnote omitted). The Board later replaced the conservator with a receiver. *Id.*

American Continental and Lincoln then challenged the Board's determinations. *Id.* The district court conducted a 29 day evidentiary hearing, in which oral testimony and documentary evidence were received by the district court. *Id.* at 904 n. 3. The district court reviewed the central issue of whether statutory grounds existed for the appointment of a conservator or receiver at the time the Bank Board acted under an arbitrary and capricious standard of review. *Id.* at 905. The district court issued a thorough opinion detailing the financial dealings of American Continental and Lincoln, *see id.* at 905–21, and concluded that the Board's decision was not arbitrary and capricious. *Id.* at 905. In a footnote the district court noted that "[a]s the discussion below demonstrates, application of the *de novo* standard ... would not lead this Court to vary its ultimate conclusions." *Id.* at 905 n. 7.

 Preclusive force attaches to determinations that were necessary to support the court's judgment in the first action. *Segal v. American Tel. & Tel. Co., Inc.*, 606 F.2d 842, 845 n. 2 (9th Cir.1979). Litigants conversely are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action. Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4421 (1981). The only determination necessary in *Wall*, as the district court stated, was whether the Board's decision was arbitrary and capricious.

Despite the limited nature of the inquiry in *Wall,* the RTC maintains that preclusive force attaches to the *Wall* factual findings as the court conducted a "searching and careful" inquiry and stated that it would have sustained the Board's action even under the *de novo* standard of review. However, *Wall* establishes only that the Board's decision was not arbitrary and capricious. The statement in footnote 7 was only an observation, which was not necessary to support the judgment, and cannot support the application of issue preclusion. *See Segal,* 606 F.2d at 845 n. 2 (preclusive force attaches only to determinations that are necessary to support court's judgment in prior litigation).

### III. *The Shields Litigation*

After American Continental declared bankruptcy, Shields, representing the class of persons who purchased securities of American Continental, instituted suit against Keating for damages resulting from purchasing overvalued securities. *Shields* at 6. The district court granted judgment as a matter of law in favor of Shields. *Id.* at 17–18.

In the present action the district court found that "[t]he RTC's claims at issue were litigated in *Shields* where Keating was a primary defendant." District Court Order at 7. It further found that Keating had a full and fair opportunity "to litigate each of the five claims the RTC is presently asserting against him." *Id.* The district court thereby found that this litigation provided an additional ground for summary judgment.

 The RTC, as the party asserting issue preclusion, must show that the estopped issues are identical to issues litigated in a prior action. *Kamilche Co. v. U.S.,* 53 F.3d 1059, 1062, *amended by Kamilche Co. v. U.S.,* 75 F.3d 1391 (9th Cir.1996); *Montana v. U.S.,* 440 U.S. 147, 155, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)("whether the issues presented ... are in substance the same"). Determining whether two issues are identical for purposes of collateral estoppel often is a difficult question. *See* Charles Alan Wright, Law of Federal Courts § 100A, at 724 n.32 (5th ed.1994). We have adopted four factors to aid in that process. *Steen v. John Hancock Mut. Life Ins. Co.,* 106 F.3d 904, 912 (9th Cir.1997) (citing *Kamilche,* 53 F.3d at 1062). Those factors are:

(1) is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

(3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) how closely related are the claims involved in the two proceedings?

*Kamilche,* 53 F.3d at 1062 (*quoting* Restatement (Second) of Judgments § 27 cmt. c. (1982)).

Applying these factors, we must decide whether the issues actually litigated and necessarily determined in *Shields* are identical to those in this case. To make this determination, we examine the elements of the counts on which the district court granted summary judgment in the present case. Issue preclusion can be properly applied only if the determinations in *Shields* support each element of the RTC's claims.

### A. *Counts I and III—The Civil RICO Claims*

 Counts I and III of the RTC's Third Amended Complaint assert causes of actions for violations of 18 U.S.C. §§ 1962(c) and (d).[3] Since the RTC's sec-

---

**3.** 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise

tion 1962(d) claim is premised on conspiracy to violate 1962(c), Count III relies on the application of collateral estoppel to uphold summary judgment on Count I. "A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) (footnote omitted). To prevail on its civil RICO claims, the RTC must prove each of those elements and that Lincoln was "injured in [its] business or property by the conduct constituting the violation." *Id.* The causation element requires a showing that the conduct constituting the violation both directly and proximately caused the alleged injury. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Recovery under RICO is limited to those injuries flowing from predicate acts, *see Sedima*, 473 U.S. at 497, 105 S.Ct. 3275 ("Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."), and does not extend to all injuries caused by an enterprise which violates RICO.

In *Shields* the American Continental investors alleged that they "purchased American Continental securities based on false representations." District Court Order at 8. At issue was whether Keating's wrongful conduct injured the American Continental investors in their business or property. The district court granted judgment as a matter of law, finding that Keating violated 18 U.S.C. § 1962(c) and (d) and that Keating's conduct injured the American Continental investors. *Shields* at 17–18.

The issue involved in *Shields* is not the same as the issue in this case. Lincoln was not an investor in American Continental and Lincoln's alleged damages stem

from conduct not adjudicated in *Shields*. While the pattern of conduct in *Shields* and the present action are related, the claims and damages are substantially dissimilar. Consequently, the *Shields* determinations cannot sustain the district court's summary judgment for the RTC. *See Kamilche*, 53 F.3d at 1062.

### B. Counts VII and VIII—Common Law Fraud and Conspiracy

 Counts VII and VIII of RTC's Third Amended Complaint assert claims for common law fraud and civil conspiracy, respectively. To prevail on its fraud claim, RTC must demonstrate that: (1) Keating made misrepresentations of material fact; (2) he knew the representations were false; (3) he intended to defraud Lincoln; (4) Lincoln actually and reasonably relied on the misrepresentations; and (5) Lincoln was damaged. *See, e.g., Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices*, 207 Cal.App.3d 1277, 255 Cal.Rptr. 483, 487 (1989); *Rice v. Tissaw*, 57 Ariz. 230, 112 P.2d 866, 868 (1941). The RTC grounds its civil conspiracy claim on the same factual predicate as its fraud claim. The civil conspiracy claim has one additional element—that Keating agreed to or acted in concert with others to defraud Lincoln. 5 B.E. Witkin, Summary of California Law § 44 (9th ed.1988); *see also McElhanon v. Hing*, 151 Ariz. 386, 728 P.2d 256, 262 (App.1985), *aff'd in part, vacated in part*, 151 Ariz. 403, 728 P.2d 273 (1986).

The district court granted RTC's motion for summary judgment on both claims on the basis of the *Shields* litigation. Specifically, the district court relied on the following factual findings:

> The prices of American Continental securities were artificially inflated throughout the Class Period by false

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(d) provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

and misleading statements and financial reports.

American Continental violated federal banking regulations governing direct investments and affiliated transactions.

American Continental engaged in a scheme to upstream dollars from Lincoln to American Continental through an illegal tax sharing agreement.

The American Continental tax sharing agreement was designed to funnel money up to American Continental from Lincoln.

*Shields* at 11–12.

Application of the *Kamilche* factors indicates that those findings are not identical to the issues raised by the RTC's fraud and civil conspiracy claims. The RTC grounds its claims in the instant case on misrepresentations made to Lincoln and Lincoln's justifiable reliance on those misrepresentations. Those issues were not determined in *Shields*. In *Shields* the American Continental bondholders argued that they actually and reasonably relied on misrepresentations made in American Continental's annual and quarterly reports.[4] The RTC does not assert that Lincoln was misled into investing in American Continental, but rather the RTC alleges that misrepresentations were made to Lincoln unrelated to any investment in American Continental and that Lincoln reasonably relied on those misrepresentations. Because the evidence necessary to prove these two issues differ significantly, the *Shield* findings cannot support the application of issue preclusion. *See Kamilche*, 53 F.3d at 1062.

*C. Count IX—Breach of Fiduciary Duties*

▮ Count IX of RTC's Third Amended Complaint alleges that Keating breached fiduciary duties owed to Lincoln. The district court granted summary judgment against Keating on this count, grounded in *Shields'* conclusion that "Keating breached his fiduciary duties to the bondholders and stockholders [of American Continental]." *Shields* at 18. The court also based its judgment on *Shields'* findings that Lincoln did not comply with good business practices; that Keating permitted construction loans to be made on the basis of unreliable financial information; and that Keating permitted Lincoln to invest in real estate without reasonable investigation. *Id.* at 14–15.

The *Shields* litigation focused on whether Keating breached his duties to American Continental. *Shields* at 18. That issue differs from the issue in this case. Here, the RTC alleges that Keating breached duties owed to Lincoln. Because the evidence necessary to prove a breach of Keating's duty to Lincoln differs from the evidence adduced in *Shields*, and the legal standard for determining whether that duty is breached differs from the standard employed in *Shields*, the issues involved in the two cases are different. *See Kamilche*, 53 F.3d at 1062. Collateral estoppel is thus inapplicable.

*CONCLUSION*

In summary, we conclude that the summary judgment cannot be sustained on the basis of the criminal conviction, the *Wall* litigation, or the *Shields* litigation.[5] The district court's order granting the RTC's motion for summary judgment is reversed

---

4. That the *Shields* plaintiffs may have demonstrated that American Continental defrauded the market does not alter our conclusions. The issues in the instant litigation fundamentally differ from those resolved in *Shields* because the RTC does not assert that it was damaged as an investor in American Continental. Rather, the RTC focuses on distinct misrepresentations allegedly made to Lincoln.

5. In light of our holding that the district court erred in entering summary judgment against Keating, we do not reach his other arguments. We also do not reach Mary Elaine Keating's argument that the district court erred in amending its judgment to include her marital estate.

and remanded for further proceedings in the district court.

**REVERSED** and **REMANDED**.