258 F.3d 1024 (9th Cir. 2001)
 POOL WATER PRODUCTS, A CALIFORNIA CORPORATION; AQUA TRI, A CALIFORNIA CORPORATION, PLAINTIFFS-APPELLANTS,
v.
OLIN CORPORATION, A VIRGINIA CORPORATION; SUPERIOR POOL PRODUCTS, A DELAWARE CORPORATION, DEFENDANTS-APPELLEES.
 No. 99-56933
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted May 11, 2001--Pasadena, California
August 3, 2001
 
 1
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 
 
 2
 Counsel Jeffrey T. Thomas and Christopher L. Pitet, Gibson, Dunn & Crutcher Llp, Irvine, California, for the plaintiffs-appellants.
 
 
 3
 Peter E. Halle, Morgan, Lewis & Bockius Llp, Washington, D.C., and Alan E. Popkin, Husch & Eppenberger Llc, St. Louis, Missouri, for the defendants-appellees.
 
 
 4
 Appeal from the United States District Court Central District of California Alicemarie H. Stotler, District Judge, Presiding D.C. No. CV-92-00563-AHS
 
 
 5
 Before: M. Margaret McKeown and Raymond C. Fisher, Circuit Judges, and David Warner Hagen,* District Judge.
 
 
 6
 FISHER, Circuit Judge,
 
 OVERVIEW
 
 7
 Plaintiffs-appellants Aqua Tri and Pool Water Products ("plaintiffs") allege that defendants-appellees Olin and Superior Pool Products ("defendants") have engaged in a "whole host" of anticompetitive activities, including the illegal acquisition of a fellow dry chemical manufacturer, FMC. That acquisition was deemed illegal by the Federal Trade Commission in a separate proceeding. In a series of pretrial motions, plaintiffs asked the district court to give the FTC decision prima facie weight in this proceeding under Section 5 of the Clayton Act, 15 U.S.C. §§ 16(a). Defendants moved to exclude plaintiffs' expert from testifying and to dismiss the case because plaintiffs lacked antitrust standing. The district court denied plaintiffs' motion and granted the defendants' motions. We affirm and hold that plaintiffs failed to meet Section 5's requirements for giving the FTC decision prima facie weight and failed to establish that they suffered any antitrust injury.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 8
 This dispute arises among four companies engaged in the manufacturing, repackaging and distributing of two chlorine-based dry swimming pool sanitizers, calcium hypochlorite ("cal-hypos") and isocyanurates ("isos").
 
 
 9
 A. Defendants Olin and Superior Pool Products
 
 
 10
 Defendant, Olin Corporation, is a long time manufacturer of cal-hypo and isos. Olin sells cal-hypos and isos through several distribution paths. It sells cal-hypos and isos in bulk to "repackagers" who repackage these chemicals into small containers or into tablets and attach their own brand name to the products. These repackagers then sell their branded products to distributers who in turn sell the chemicals to retail stores, pool contractors and pool maintenance businesses. Olin also repackages these chemicals itself and sells them directly to distributers or mass-marketers (e.g., Costco) under three brand names -HtH, Pace and Sun.
 
 
 11
 In 1985, Olin purchased the assets of FMC, which included a chemical production facility for isos, a repackaging plant and the brand name "Sun."[1] In 1986, Olin entered the wholesale pool products distribution business by purchasing Kern Products, an existing West Coast Olin distributer. Prior to Olin's purchase, Kern was a failing business. Kern was renamed Superior Pool Products ("SPP") and became a wholly owned subsidiary of Olin. Through SPP, Olin distributed isos and cal-hypos directly to retail stores, pool contractors and pool maintenance businesses.
 
 
 12
 In summary, Olin, combined with SPP, is an integrated manufacturer, repackager and distributer of pool sanitizers that sells its products in various forms to various entities along the distribution chain.
 
 B. The FTC Proceedings
 
 13
 The FTC challenged Olin's acquisition of FMC in 1985. After a 52-day hearing in 1987, an Administrative Law Judge ("ALJ") made 895 findings of fact and six conclusions of law and ultimately held that the acquisition violated Section 7 of the Clayton Act and Section 5 of the FTC Act and ordered divestiture of the FMC assets. See In re Matter of Olin Corp., 113 F.T.C. 400 (1990). The FTC substantially affirmed the ALJ's order on June 13, 1990. We denied Olin's petition for review in a published decision, Olin Corp. v. FTC, 986 F.2d 1295 (9th Cir. 1993), and the Supreme Court denied Olin's petition for certiorari. 510 U.S. 1110 (1994). At that point Olin began divesting itself of the FMC assets.
 
 
 14
 C. Plaintiffs Pool Water Products and Aqua Tri
 
 
 15
 The plaintiffs, Pool Water Products ("PWP") and Aqua Tri, are related by common ownership. Aqua Tri is a repackager of cal-hypos and isos. Its primary customer is PWP, a distributer of cal-hypos and isos in California, Arizona, Florida and Texas. It sells cal-hypos and isos under its own brands -All Clear, Fresh and Guardex. PWP is a direct competitor of SPP. PWP claims that its profits have been drastically reduced as a result of Olin's and SPP's anticompetitive activities. Specifically, plaintiffs argue that PWP's profits were reduced by $55 million as a result of lost market share and price reductions in isos and cal-hypos.
 
 D. The Proceedings in the District Court
 
 16
 Plaintiffs filed suit against Olin and SPP in 1992 alleging that Olin and SPP attempted to dominate the dry chemical pool sanitizer industry and destroy competition. In their Third Amended Complaint, plaintiffs alleged Olin and SPP had engaged in the following anticompetitive activities: (1) the acquisition of FMC's assets, (2) price squeezing of repackagers, (3) predatory pricing by SPP, (4) price discrimination against repackagers and distributors, (5) refusal to deal with Aqua Tri and PWP, (6) vertical integration, (7) exclusive distributorships of Olin's products, (8) collusion between Olin and other manufacturers and (9) collusion between Olin and other distributors. Plaintiffs claim these anticompetitive acts violated Sections 1 and 2 of the Sherman Act, Section 7 of the Clayton Act and California law. They claim that Olin and SPP monopolized or restrained trade in four different product markets: (1) the sale of cal-hypos by manufacturers to wholesalers across the entire United States; (2) the sale of isos by manufacturers to wholesalers across the entire United States; (3) the sale of branded cal-hypos to retailers in California, Arizona and Nevada; and (4) the sale of branded isos to retailers in California, Arizona and Nevada.
 
 
 17
 In preparation for trial, both plaintiffs and defendants filed motions in limine to exclude various items of evidence. Plaintiffs also moved to give prima facie weight to the FTC's judgment and defendants moved to dismiss the lawsuit for lack of antitrust injury. On October 28, 1999, the district court denied plaintiffs' motion to give the FTC ruling prima facie weight and granted defendants' motions to exclude plaintiffs' sanitizer pricing study, evidence of below-cost pricing and the liability and damage testimony of plaintiffs' expert, Dr. Kent Anderson. After it made these preliminary rulings, the district court held that plaintiffs had failed to put forward any evidence that they had suffered antitrust injury. It denied the remaining motions as moot and entered judgment in favor of defendants.
 
 DISCUSSION
 
 18
 A. Prima Facie Weight of Prior FTC Proceeding
 
 
 19
 Plaintiffs moved in the district court to give the findings of fact and conclusions of law adopted by the FTC in its judgment against Olin prima facie evidentiary weight pursuant to Section 5 of the Clayton Act, 15 U.S.C. §§ 16(a).[2] The district court held that the judgment and findings could not be given such evidentiary weight because the issues and facts in the two proceedings are different. The court did allow the adjudicative facts of the prior proceedings to be admitted -i.e., documents showing there was an ALJ hearing, the Order entered by the FTC requiring divestiture and the decision of this Circuit affirming the FTC. Plaintiffs appeal the district court's decision regarding the prima facie weight of the findings and conclusions. We review the district court's decision de novo. Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 571 (1951).
 
 
 20
 Congress' intent in enacting the original version of Section 5 was "to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions." Id. at 568. This benefit is not without limits, however. First, it grants only prima facie weight, not collateral estoppel effect to findings. Although Section 5 generally does not bar the application of collateral estoppel, it does so when the FTC itself makes the findings. See 15 U.S.C.§§ 16(a). Second, Section 5 grants prima facie weight only to matters as to which collateral estoppel would apply had the government itself brought the suit. See id. This section makes available to a private litigant as prima facie evidence "all matters respecting which said judgment or decree would be an estoppel" between the defendant and the United States. 15 U.S.C. §§ 16(a); Emich Motors, 340 U.S. at 568.[3] Accordingly, the "evidentiary use" of the prior judgment is"determined by reference to the general doctrine of estoppel." Id. For that, we look to Ninth Circuit law.
 
 
 21
 "Collateral estoppel, or issue preclusion, bars the relitigation of issues actually adjudicated in previous litigation between the same parties." Kamilche Co. v. United States, 53 F.3d 1059, 1062 (9th Cir. 1995), as amended, 75 F.3d 1391 (9th Cir. 1996) (internal quotation omitted). It precludes relitigation of both issues of law and issues of fact. Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 910 (9th Cir. 1997). The party asserting collateral estoppel must show that the estopped issue is identical to an issue actually litigated and decided in the previous action. Kamilche, 53 F.3d at 1062. Preclusive force attaches only to issues that were necessary to support the judgment in the prior action. Resolution Trust Corp., v. Keating, 186 F.3d 1110, 1115 (9th Cir. 1999). Litigants are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action. Id.
 
 
 22
 Even then, not everything capable of collateral estoppel effect is entitled to prima facie weight under Section 5. Only those issues in the first proceeding that are relevant in the second proceeding are admissible. See Twentieth Century Fox Film Corp. v. Goldwyn, 328 F.2d 190, 225 (9th Cir. 1964). The district court has the duty, as it does with the admission of all evidence, to determine what is probative to the proceeding at hand and can exclude matters that are irrelevant. See id.
 
 
 23
 Here, plaintiffs asked the district court to give given prima facie weight to the FTC's findings of fact and conclusions of law from its proceedings against Olin. The FTC itself acted on an appeal from the ALJ's decision. See In re Matter of Olin Corp., 113 F.T.C. 400 (1990). The ALJ held a 52-day trial and made 895 findings of fact and six conclusions of law leading up to his ultimate conclusion that Olin violated Section 7 of the Clayton Act and Section 5 of the Federal Trade Commission Act because the "effect of [the FMC ] acquisition has been or may be substantially to lessen competition or to tend to create a monopoly in the aforesaid product and geographic markets."[4] The FTC affirmed the ALJ, concluding that Olin's acquisition of FMC's assets "may substantially lessen competition" in two national markets: (a) the manufacture and sale of chlorinated isocyanurate and calcium hypochlorite dry swimming pool sanitizers; and (b) the manufacture and sale of chlorinated isocyanurate dry swimming pool sanitizers. (Emphasis added.) The FTC did not, however, conclude that the FMC acquisition may tend to create a monopoly, as the ALJ had expressly found. Importantly, the FTC's judgment stated that it adopted the findings of fact and initial decision of the ALJ that were not inconsistent with the findings of fact and conclusions of law in its own opinion. It did not identify which of the findings and conclusions were consistent and which were not.
 
 
 24
 Plaintiffs moved the district court to give prima facie weight to all of the ALJ's 895 findings of fact and six conclusions of law. They did not identify for the district court which findings and conclusions were consistent with the FTC's decision, which were necessary to support the judgment or which were identical and relevant to the issues that needed to be resolved by the district court in this case. Plaintiffs simply argued that they were entitled to the wholesale admission of all of the ALJ's findings and conclusions.
 
 
 25
 Although the prior proceeding and this proceeding are similar in that they both contend that Olin's acquisition of FMC is illegal under the antitrust laws, the issues resolved in the two proceedings are quite different. See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485-86 (1977) (describing the differences between actions under Section 4 and Section 7 of the Clayton Act in their treatment of illegal acquisitions). The FTC was attempting to predict the effects of the FMC acquisition, not decide whether the acquisition actually resulted in lessened competition, one of the ultimate issues in this proceeding. See 15 U.S.C.§§ 18; United States v. Gen. Dynamics Corp., 415 U.S. 486, 505 (1974); Brunswick, 429 U.S. at 485-86. In making its determination, the FTC relied upon the evidentiary findings of an ALJ who heard testimony in 1987 and, who, as is advised, see General Dynamics, 415 U.S. at 505-06, considered only pre acquisition evidence. Ultimately, the FTC concluded that Olin's acquisition of FMC assets "is likely substantially to lessen competition in the markets for dry pool sanitizers and isocyanurates in violation of Section 7 of the Clayton Act and Section 5 of the FTC Act."
 
 
 26
 In this proceeding, plaintiffs alleged and tried to prove that "Olin's acquisition of FMC and its vertical integration with distributors (including Superior) have substantially lessened competition and/or tended to create a monopoly in some or all of the Markets." (Emphasis added.) Unlike in the FTC's action, plaintiffs here must show they were actually injured by a lessening of competition. See Associated Gen. Contractors v. California State Council of Carpenters, 459 U.S. 519, 535 (1983); Brunswick, 429 U.S. at 485-86. Further, the "Markets," as defined by plaintiffs, are different from the markets in the FTC proceeding. Here, they allege four markets: (1) the sale of cal-hypos by manufacturers to wholesalers across the entire United States; (2) the sale of isos by manufacturers to wholesalers across the entire United States; (3) the sale of branded cal-hypos to retailers in California, Arizona and Nevada; and (4) the sale of branded isos to retailers in California, Arizona and Nevada. The FTC found there to be only two markets, only one of which matches any of the relevant markets alleged in this proceeding. Moreover, the time period at issue here is different from the period at issue in the FTC proceeding. Here, the time period is the postacquisition period (after 1985), as it must be because plaintiffs must prove an actual lessening of competition. In short, not all of the issues raised in the first proceedings are identical or relevant to the issues raised in the second proceeding.
 
 
 27
 In addition, the great majority of the ALJ's findings of fact were not necessary to the FTC's ultimate judgment that the FMC acquisition was likely to substantially lessen competition. Most of the findings dealt with mundane issues such as the employment positions held by various witnesses and summaries of documents. These findings cannot be deemed necessary to whether Olin violated Section 7 of the Clayton Act. See Keating, 186 F.3d at 1115-16. Lastly, not all of the ALJ's findings and conclusions were adopted by the FTC. Some of the ALJ's findings were likely directed to his conclusion that the FMC acquisition might tend to create a monopoly, a conclusion the FTC did not make. For all of these reasons, the district court did not err in refusing to grant prima facie weight to all of the findings of fact and conclusions of law.
 
 
 28
 It is probable that some of the ALJ's findings of fact the FTC adopted were necessary to the FTC's judgment and would have been identical and relevant to issues raised in the proceedings here.[5] Plaintiffs argue that the district court should have admitted all of the findings and conclusions and that defendants should have filed motions in limine to exclude the impermissible findings. This misstates the parties' respective burdens. It is up to the party seeking prima facie weight to establish that it has met the requirements of Section 5 for each issue as to which it seeks prima facie weight. See Kamilche, 53 F.3d at 1062 (stating burden is on party seeking collateral estoppel to establish that requirements of collateral estoppel are met). Neither the district court nor the defendant is required to engage in a "hunt and peck" exercise to ferret out potentially relevant and necessary findings. Accordingly, the district court did not err in refusing to give prima facie weight to the FTC's findings and conclusions, because plaintiffs failed to establish that the Section 5 requirements were met for any of the findings and conclusions. Regardless, even if these findings and conclusions were given prima facie weight, plaintiffs would have failed to establish antitrust injury, as we discuss below.
 
 B. Antitrust Injury
 
 29
 Plaintiffs allege that defendants have engaged in multiple acts in violation of the antitrust laws and that these acts have caused them injury. Assuming defendants had engaged in these acts and that they are all illegal, plaintiffs have failed to prove "antitrust injury." All that plaintiffs have claimed is that their alleged injuries are causally linked to defendants' illegal activities. That is not enough to maintain a private antitrust action. See Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 109 (1986); Brunswick Corp., 429 U.S. at 486-87.
 
 
 30
 1. Procedural Posture of the Motion and Standard of Review
 
 
 31
 Procedurally, there is an issue as to how the antitrust injury issue was raised before the district court and how we should review the district court's decision. Prior to trial, defendants moved to dismiss the action for lack of antitrust injury. Both plaintiffs and defendants submitted numerous trial exhibits and other evidence in connection with the motion. In deciding the motion, the district court considered materials outside the pleadings, effectively treating the motion as one for summary judgment. See Fed. R. Civ. P. 12(b); Am. Ad Mgmt, Inc. v. Gen. Tel. Co. of California, 190 F.3d 1051, 1054 (9th Cir. 1999) (reviewing district court's dismissal of antitrust claim on summary judgment); cf. R.C. Dick Geothermal Corp. v. Thermogenics, Inc., 890 F.2d 139, 145 (9th Cir. 1989) (en banc) (holding antitrust standing may be considered at any stage of the litigation). Therefore, plaintiffs' burden to defeat the motion was to "set forth specific facts showing there was a genuine issue for trial." Fed. R. Civ. P. 56(e).
 
 
 32
 On appeal, we review the district court's decision de novo. Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc); Am. Ad Mgmt., 190 F.3d at 1054. Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party, (a) "the district court correctly applied the relevant substantive law" and (b) there are no genuine issues of material fact. Id. For purposes of analysis, we assume that all the evidence contested in this case is admissible. Our decision does not depend upon the outcome of the motions in limine or on whether the FTC decision was given prima facie weight.
 
 2. Merits
 
 33
 In adopting the federal antitrust laws, Congress allowed private parties to bring suit.[6] See Section 4 of the Clayton Act, 15 U.S.C. §§ 15. In addition to the traditional limitations upon standing imposed by the Constitution, Congress imposed additional limitations upon those who can recover damages under the antitrust laws. See Brunswick, 429 U.S. at 485-86; 2 Phillip E. Arreda & Herbert Hovenkamp, Antitrust Law ¶¶ 335 at 286-303 (2d ed. 2000). These limitations are sometimes referred to as the antitrust standing requirements. See Am. Ad Mgmt, 190 F.3d at 1054. The most important limitation is that the private party "must prove the existence of `antitrust injury.' " Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990)("ARCO") (quoting Brunswick, 429 U.S. at 489).
 
 
 34
 Under Section 4, private plaintiffs can be compensated only for injuries that the antitrust laws were intended to prevent. It is not enough to show that one's injury was caused by illegal behavior. See Cargill, 479 U.S. at 109; Brunswick, 429 U.S. at 485-86. "To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se." Rebel Oil Co. v. ARCO, 51 F.3d 1421, 1433 (9th Cir. 1995) ("Rebel I") (internal citation omitted) (emphasis added).
 
 
 35
 "It is well established that the antitrust laws are only intended to preserve competition for the benefit of consumers." Am. Ad Mgmt, 190 F.3d at 1055."Consumer welfare is maximized when economic resources are allocated to their best use and when consumers are assured competitive price and quality." Rebel I, 51 F.3d at 1433 (internal citation omitted). Accordingly, the antitrust laws are only concerned with acts that harm "allocative efficiency and raise[ ] the price of goods above their competitive level or diminish[ ] their quality." Id.; see also Nelson v. Monroe Reg'l Med. Ctr., 925 F.2d 1555, 1564 (7th Cir. 1991) (Antitrust injury "means injury from higher prices or lower output, the principal vices proscribed by the antitrust laws.").
 
 
 36
 Although defendants may have engaged in "a whole host of anticompetitive practices," plaintiffs have only presented two types of injury from those practices -decreased prices and decreased market share. Plaintiffs' theory of the case is that defendants' ultimate goal was to raise prices in the dry swimming pool sanitizer markets. To accomplish that, defendants allegedly engaged in a series of anticompetitive actions starting with the illegal acquisition of FMC's assets and the purchase of Kern, then moving on to a refusal to deal with Aqua Tri and predatory pricing by SPP. Defendants' alleged scheme involved two phases. First, through these various mechanisms they would increase their market power and drive prices down. Second, once they had market power, they would raise prices to supracompetitive levels. The fatal flaw in plaintiffs' case is that defendants never reached the second phase. Defendants managed only to drive prices down; they were never able to raise prices to supracompetitive levels. Plaintiffs' theory of their injury is that PWP lost profits through SPP's reduction of the price of cal-hypos and isos and PWP's loss of market share.
 
 
 37
 The Supreme Court has made clear, however, that a decrease in profits from a reduction in a competitor's prices, so long as the prices are not predatory, is not an antitrust injury. Brooke Group Ltd v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 223-24 (1993). Absent proof of predation, it is immaterial whether the price reduction is the result of illegal price setting, illegal mergers and acquisitions, collusion, price discrimination or any other antitrust violation. "Low prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition . . . . We have adhered to this principle regardless of the type of antitrust claim involved." Id. (holding low prices resulting from illegal price discrimination did not amount to antitrust injury) (quoting ARCO, 495 U.S. at 340 (holding low prices set through an illegal vertical, maximum price-fixing scheme did not amount to antitrust injury)); Cargill, 479 U.S. at 114-117 (holding low prices resulting from an illegal merger did not amount to antitrust injury). "When prices are not predatory, any losses flowing from them cannot be said to stem from an anticompetitive aspect of the defendant's conduct." ARCO, 495 U.S. at 340-41 (emphasis added).
 
 
 38
 Accordingly, unless plaintiffs can show that Olin's prices were predatory -i.e., "below an appropriate measure of [SPP's] costs" -they have failed to show antitrust injury from the decrease in prices for isos and cal-hypos. Brooke Group, 509 U.S. at 222. Neither the Supreme Court nor this Circuit has answered the question of what "an appropriate measure of costs" is, but we have clearly stated what is not appropriate. See Rebel Oil Co. v. ARCO, 146 F.3d 1088, 1092 (9th Cir. 1998) ("Rebel II"). In Rebel II, we held that the price paid from a wholly owned subsidiary to its parent for goods was not an appropriate measure of costs. That price is considered a "transfer price, not a sale." Id. at 1096. When there is a wholly owned subsidiary, "the costs of [the parent] and [the subsidiary] together must be considered, not simply [the subsidiary's] costs versus its sales." 146 F.3d at 1096; see also Volrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir. 1993) (stating that when entities are considered a combined unit, "then the appropriate consideration is the costs of the combined group to determine if the combined group sold below its costs").
 
 
 39
 Plaintiffs' calculations of SPP's alleged below-cost pricing did not consider the costs to Olin, the parent company, in producing and transferring isos and cal-hypos to SPP, its wholly owned subsidiary, and in some instances expressly relied upon transfer prices. Nor did plaintiffs calculate any of the competing measures of "appropriate costs" of isos and cal-hypos for Olin and SPP -e.g., marginal variable cost, average variable cost or average total cost. See Rebel II, 146 F.3d at 1092-93 (describing competing measures of calculating appropriate costs in determining whether prices are predatory). Accordingly, plaintiffs have not presented any evidence that SPP engaged in predatory pricing. See id. at 1096; Volrath, 9 F.3d at 1460. Plaintiffs' reduced profits attributable to defendants' decrease in prices is therefore not an antitrust injury. See Brooke Group, 509 U.S. at 222-23; ARCO, 495 U.S. at 340; Rebel II, 146 F.3d at 1096.
 
 
 40
 Plaintiffs' second alleged antitrust injury is that PWP's market share decreased -from about 60 percent of the market to about 35 percent -during the time period these alleged anticompetitive activities occurred. A decrease in one competitor's market share, however, affects competitors, not competition. See Cargill, 479 U.S. at 116 ("The kind of competition that [plaintiff] alleges here, competition for increased market share, is not activity forbidden by the antitrust laws."). Shifting PWP's sales to SPP and other competitors in the market does not directly affect consumers and therefore does not result in antitrust injury. Id. Increased concentration may make anticompetitive activity more likely, but in and of itself it does not amount to antitrust injury. See Brunswick, 429 U.S. at 486-87.
 
 
 41
 Plaintiffs argue that they have at least proved antitrust injury as a result of the FMC acquisition, because this acquisition was determined to be illegal by the FTC and they suffered injury from the anticompetitive acts that were made possible by the acquisition. It is not enough, however, to show that defendants violated the law and that the plaintiffs suffered a causally related injury. The critical question for determining whether there is antitrust injury is whether the harm is of the kind the antitrust laws were meant to protect against. See Cargill, 479 U.S. at 109; Brunswick, 429 U.S. at 485-86; Rebel I, 51 F.3d at 1433. As stated above, reduced profits from lower prices and decreased market share is not the type of harm Section 4 was meant to protect against. Accordingly, the district court did not err in holding plaintiffs failed to establish antitrust injury.[7]
 
 CONCLUSION
 
 42
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 43
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable David Warner Hagen, United States District Judge for the District of Nevada, sitting by designation.
 
 
 [1]
 For a more detailed description of Olin prior to 1987 and the FMC acquisition see Olin Corp. v. FTC, 986 F.2d 1296 (9th Cir. 1993), and In re Matter of Olin Corp., 113 F.T.C. 400 (1990).
 
 
 [2]
 This section provides: A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken. Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel, except that, in any action or proceeding brought under the antitrust laws, collateral estoppel effect shall not be given to any finding made by the Federal Trade Commission under the antitrust laws or under section 45 of this title which could give rise to a claim for relief under the antitrust laws. 15 U.S.C. §§ 16(a).
 
 
 [3]
 We have previously held that an FTC order constitutes a final judgment for purposes of Section 5. See Purex Corp., Ltd. v. Procter & Gamble Co., 453 F.2d 288, 290-91 (9th Cir. 1971).
 
 
 [4]
 Under Section 5, prima facie weight is given only to violations of the "antitrust laws" as defined by the Clayton Act. This does not include violations of the FTC Act. See Section 1(a) of the Clayton Act, 15 U.S.C. §§12(a); Nashville Milk Co. v. Carnation Co. , 355 U.S. 373, 375-76 (1958); Yamaha Motor Co., Ltd. v. FTC, 657 F.2d 971, 982 (8th Cir. 1981). Appellees did not raise the argument in the district court or on appeal that the findings of fact and conclusions of law made in connection with the violation of Section 5 of the FTC Act were not entitled to prima facie weight. Accordingly, we do not address that issue.
 
 
 [5]
 After reviewing the ALJ's conclusions of law, it is clear to us that none of them is relevant or identical to issues raised in this proceeding for the reasons discussed above.
 
 
 [6]
 The requirements for maintaining an antitrust suit under California law mirror the federal requirements. Kentmaster Mfg. Co. v. Jarvis Prods. Corp., 146 F.3d 691, 695 (9th Cir. 1998), as amended 164 F.3d 1243 (9th Cir. 1999)). Therefore, our resolution of the federal claims also resolves the state law claims. Id.
 
 
 [7]
 Because our determination that plaintiffs have failed to establish antitrust injury does not depend upon the admissibility of the disputed evidence, we decline to address the motions in limine.